[No. 187-41292-2. Division Two. November 25, 1970.]

VERN CHITTICK *et al., Appellants,* v. WILLIAM MORGAN BOYLE *et al., Respondents.*

*Frank B. Carr, Nicolai, Montgomery & Sorrel,* and *Max R. Nicolai,* for appellants.

*Joseph H. Smith* and *Storrs B. Clough,* for respondents.

PETRIE, J.—Vern Chittick, plaintiff herein, is the owner and operator of a tavern business in Sultan, Washington. The business is located in a commercial building owned by defendant, William Morgan Boyle. Chittick's tenancy is governed by a lease, one of whose conditions is

> IT IS FURTHER AGREED that if, during the term hereof, the Lessor receives an offer to sell the above described real property before such offer is accepted the Lessee shall be given five (5) days within which to make a valid offer to purchase said real property on the same terms and conditions as those contained in the offer of any such third party.

In January, 1969, when Chittick attempted to pay his regular monthly rent to Boyle, he was advised that the real estate had been sold to defendant Koehler's, Inc., under a contract of sale executed December 10, 1968. Lawrence Koehler, president of Koehler's, Inc., is the owner of a sporting goods business located in the same building as the tavern.

Chittick thereupon brought this action seeking (1) to have the contract of sale between Boyle and Koehler's, Inc., declared void; and (2) to compel specific performance by Boyle of the alleged "option to purchase" contained in the lease.

The trial court denied specific performance and dismissed Chittick's complaint. He has appealed to this court.

The fundamental issue presented by this appeal requires interpretation of the quoted paragraph in the Boyle-Chittick lease. Chittick, the lessee, contends that the paragraph granted him an option to purchase the premises—an option exercisable within 5 days after receipt of notice of the terms and conditions of any offer the owner may have received. The defendants, Boyle and Koehler's, Inc., having joined in their brief, contend on appeal that the paragraph

merely granted Chittick the right to join in the bidding prior to Boyle's acceptance of any offer.

We believe the paragraph most closely resembles a preemptive provision described in Restatement of Property § 413(1) (1944):

> A promissory restraint or forfeiture restraint on the alienation of a legal estate in land which is in the form of a provision that the owner of the estate shall not sell the same without first offering to a designated person the opportunity to meet, with reasonable expedition, any offer received, is valid, unless it violates the rule against perpetuities.

It is quite clear, of course, that Chittick was granted the opportunity to meet any offer received by Boyle and subsequently communicated to Chittick. In that sense, Boyle was required to deal with Chittick before he was free to deal finally with others. It is not, however, too readily apparent what privileges Boyle had available to him once he had notified Chittick of receipt of an offer.

 Variations in drafting this type of preemptive provision would create variable responsibilities upon the person subject to the provision in dealing with the designated holder of the preemptive right. The real issue, therefore, reduces to a determination of the specific circumstances under which Boyle was privileged to accept the original offer from Koehler's, Inc. Such determination may be resolved from the document itself, or from the expressed intent of the parties, if ascertainable, or both. *Superior Portland Cement, Inc. v. Pacific Coast Cement Co.*, 33 Wn.2d 169, 205 P.2d 597 (1949).

The elementary rule of interpretation requires that we accept a construction of the paragraph in question which gives full force to all the provisions, rather than a construction which will impair the force and effect of any provision. *Willenbrock v. Latulippe*, 125 Wash. 168, 215 P. 330 (1923). There are two considerations which cause us to give to the paragraph a construction more meaningful than that suggested by defendants.

(1) Chittick's offer, if he makes one, need only be "on

the same terms and conditions as those contained in the offer of any such third party." Of course, once knowing the specific terms of a third party's offer, Chittick could make any offer he might choose. There must, therefore, be some significance to an offer which merely meets the original offer. The only significance which we can ascribe to the language used is that if his offer is "on the *same* terms and conditions" as the third party's offer, it will have some binding effect. (Italics ours.)

(2) The binding effect of an offer which merely meets the third party's offer is further manifest by the requirement that Chittick's offer be a "valid" offer. The adjectival limitation upon the offer grants to the owner of the property some discretion to accept or reject the offer—a discretion based upon the validity of the offer made. If Boyle were free to accept or reject any offer which Chittick might make, there would be no need to premise its acceptance or rejection upon its intrinsic validity or invalidity.

Furthermore, it appears that the parties to the lease, Boyle and Chittick, manifested an intent that the paragraph gave Chittick some form of preemptive right. Both in a pretrial affidavit and in an affirmative defense asserted in his answer to the complaint, Boyle alleged a complete compliance within the terms of the lease by asserting that prior to the sale to Koehler's, Inc., he had discussed a possible sale with Chittick and had been advised that Chittick was in no financial condition to consider a purchase of the property; and that after more than 5 days had elapsed, Boyle *accepted* Chittick's decision as final. This seems to indicate that Boyle believed he was not free to accept the Koehler's, Inc., offer in preference to an offer by Chittick. (We cannot, however, speculate as to the effect of any oral discussion Boyle may have had with Chittick concerning a proposed sale, because the trial court specifically found—and such finding is not challenged herein—that Chittick did not receive the direct notice which had been contemplated by the lease.)

Finally, Boyle's own testimony does not negate his grant-

ing of an effective preemptive right. Boyle acknowledged that, prior to execution of the lease (1) he was requested to give Chittick a chance to buy if there was going to be a sale, (2) he responded satisfactorily to such request, (3) that "as far as that goes, I cared less", but (4) that he could not recall specific terms of any description having been discussed.

We conclude, therefore, that by the terms of the lease, there was unalterably a meeting of the minds, in no way disclaimed by any expressed intentions of the parties, to grant Chittick a preemptive right to purchase the property described in the lease. There is, in fact, no evidence to support a contrary finding. Once Boyle decided to sell and actually received a specific offer from a third party, Chittick had an exercisable right to purchase said property under the same terms and conditions set forth in the third party's offer, within 5 days of receipt of notice of said offer. He was never given the opportunity to exercise that right. To that extent, Boyle breached the contract between the two parties.

We examine now the remedies available to Chittick because of such breach of contract, both against Boyle and against Koehler's, Inc.

Chittick chose to pursue the remedy of specific performance[1] of his contractual rights. Koehler's, Inc., contends that it was a bona fide purchaser for value without notice of the particular paragraph in the lease, and, therefore, was entitled to the benefit of its bargain with Boyle regardless of how the controversy may be resolved between Chittick and Boyle.

A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration. *Glaser v. Holdorf*, 56 Wn.2d 204, 352 P.2d 212 (1960).

---

[1]That portion of the complaint seeking damages only, against Boyle, appears to have been abandoned. In any event, no specific damages were proved at trial.

In our jurisdiction, to constitute one a bona fide purchaser of property as against an outstanding equity, the purchaser must have paid the purchase price and have acquired the *legal title* without notice of such prior equity. *Peterson v. Paulson,* 24 Wn.2d 166, 163 P.2d 830 (1945). In the instant case, Koehler's, Inc., have not received legal title. They have merely received from Boyle a promise that he will execute and deliver to the corporation a statutory warranty deed upon receipt of full payment of the purchase price in the manner specified in the real estate contract executed December 10, 1968. Accordingly, Koehler's, Inc., cannot qualify as a bona fide purchaser of the Boyle property.

In view of the foregoing, we need not make decisive—but do note—that Chittick's possession under a lease, all of which was known to Lawrence Koehler, placed upon Koehler's, Inc., the duty to conduct a reasonably prudent inquiry as to the contents of such lease. *Glaser v. Holdorf, supra.*

At the time he instituted this complaint, Chittick executed, and filed with the clerk of court, a real estate contract in the same terms and conditions as the contract executed by Koehler's, Inc., and at the same time made the requisite payments to the clerk. Having fully exercised the right granted to him under the lease, he is now entitled to specific performance thereof. *Superior Portland Cement, Inc. v. Pacific Coast Cement Co., supra.*

The decree appealed from is reversed and the cause remanded to the superior court for further proceedings in accordance with this opinion.

ARMSTRONG, C. J., and PEARSON, J., concur.