[No. 968-3. Division Three. February 11, 1975.]

O. R. McVean, *Appellant*, v. Robert C. Coe et al.,
*Respondents.*

*E. Albert Morrison* and *Kenneth S. Kessler,* for appellant.

*Hooper, Risken & Farmer* and *Joseph Panattoni* (of *Panattoni & Gorrie*), for respondents.

Green, J.—Plaintiff, O. R. McVean, commenced this action for specific performance of a lease-option agreement and for damages resulting from the breach of a hunting

rights agreement. From a dismissal of his complaint, plaintiff appeals.

One basic issue is presented: Are the defendants Coe, and third-party defendants, Hooper, Risken and Farmer bona fide purchasers under their recorded executory real estate contracts of purchase, whose interests prevail over the plaintiff's interest under his prior unrecorded lease-option and hunting rights agreements. We think not.

Mike Emerick, additional third-party defendant, is the owner of a large ranch in Kittitas County. In 1957, plaintiff leased 9.8 acres of land from Emerick. This written lease was for 20 years at an annual rental of $100, with an option to purchase the property for $800 during the last year of the lease (1977). Plaintiff was given the right to drill a well on other premises owned by Emerick, thin and prune the timber on the leased property, and was obligated to pay any real estate taxes for improvements. Emerick was to pay all other real estate taxes. Simultaneously, the parties executed a written agreement granting plaintiff a nonexclusive right to hunt on four other sections of Emerick's land for the term of the lease.

Neither of these two agreements was recorded until July 29, 1971.

Plaintiff exercised his rights and performed his obligations under the agreements. He constructed a steel gate across the county road leading to the property; electrical lines were brought into the acreage and to a well-site; an existing well was reconditioned and 1,500 feet of 1-inch water pipeline was laid from the well to a building site; ground was excavated for the building site, a septic tank and drain field; a short road was built to the building site; 1,000 building blocks were brought in for house construction; and the trees were thinned, pruned and the brush piled on the acreage. Plaintiff testified the total cost of these improvements was $5,697.

Plaintiff's job took him to South America from 1965 to 1971. In the interim, June 15, 1966, Emerick sold his ranch

to the defendants, Hooper, Risken and Farmer (hereinafter "the partnership"). At the time of this sale, Emerick told the partnership that he had a 9-acre lease and hunting rights agreement with plaintiff, but that the agreements were oral; that plaintiff was somewhere in South America and would not return; and that plaintiff had never paid his rent. No mention was made of plaintiff's option to purchase the leased property. The partnership and closing attorney relied on Emerick's representations and the record title which failed to disclose the agreements. The contract of sale reveals that the property was sold

. . . subject to rental agreement between seller and one McVain [*sic*] covering approximately nine (9) acres of said land.

This contract was recorded July 1, 1966. The underlying earnest money agreement contained similar language as did the statutory warranty deed executed as part of the escrow closing papers.

In 1970, defendants Coe became interested in purchasing the property from the partnership. When a title search disclosed the above reference to plaintiff's interest, the partnership agreed to convey the property free and clear of any interest of plaintiff. The contract of sale to Coe was executed January 1, 1970, and recorded on February 13, 1970.

In 1971, plaintiff returned from South America and informed Coe of his intention to assert his rights under the lease-option and hunting rights agreements.. When first confronted, Coe acquiesced saying only that he disapproved of hunting. Soon after, however, plaintiff was denied access to the property and this action commenced.

The foregoing are substantially the facts of the case as found by the trial court. In addition, the court found that although no rent was paid by plaintiff on the lease, plaintiff

did make certain gifts of property to Emerick.[1] The court also found that there were no communications from the plaintiff to the partnership, although plaintiff knew in 1966 that Emerick had sold the property. Further, the court found that the partnership had no means of contacting the plaintiff in South America. However, the court refused to find that plaintiff had abandoned his rights under the agreements. The findings of fact being unchallenged are verities. CAROA 43.

Based upon these findings, the trial court concluded that the partnership and Coe purchased the premises without actual notice of the rights of the plaintiff and were entitled to rely on the record title and the representations of Emerick. The underlying reason for the trial court's conclusion is expressed in its oral ruling that:

> [A]n unrecorded lease not fully paid and delinquent with an option not exercised [should] be declared void as to the recorded executory contracts without notice
> . . .

We disagree with this reasoning and the conclusion of the trial court for the reasons expressed below.

Before one can become a bona fide purchaser of property as against an outstanding equity, the purchaser must have paid the purchase price and have acquired the legal title without notice of such prior equity. *Peterson v. Paulson*, 24 Wn.2d 166, 180, 163 P.2d 830 (1945); *Chittick v. Boyle*, 3 Wn. App. 678, 479 P.2d 142 (1970). This rule was recently followed in *Snuffin v. Mayo*, 6 Wn. App. 525, 494 P.2d 497 (1972). In *Snuffin* the defendants worked land which they rented from one Lorentsen. Lorentsen sold the land under a real estate contract to the plaintiffs. Defendants did not comply with a notice to vacate and plaintiffs filed a complaint in unlawful detainer. In finding for plaintiffs, the trial court ruled on evidentiary matters based

---

[1] Plaintiff testified that he had given Emerick tools and equipment, *i.e.*, two chain saws and miscellaneous ranch equipment reasonably valued in excess of $1,000. According to plaintiff, these items were to cover the rent while he was absent from the country.

upon the premise that plaintiffs were bona fide purchasers. In reversing, the appellate court disagreed, stating at pages 527-28:

> In our opinion, this premise was incorrect. A bona fide purchaser for value is one who, without notice of another's claim of right to, or equity in, the property *prior to his acquisition of title*, has paid the vendor a valuable consideration. *Chittick v. Boyle*, 3 Wn. App. 678, 479 P.2d 142 (1970); *Glaser v. Holdorf*, 56 Wn.2d 204, 352 P.2d 212 (1960). Snuffins, then, cannot be bona fide purchasers until they have acquired legal title. *Chittick v. Boyle, supra; Peterson v. Paulson*, 24 Wn.2d 166, 163 P.2d 830 (1945). In the present case, the 80 acres were purchased by executory contract. Snuffins have received only an equitable title, a promise that legal title will be executed and delivered upon full payment of the contract price. Legal title remains in Lorentsen and Snuffins' right to possession derives from whatever rights Lorentsen has as legal titleholder.

Here, it is agreed that the contracts between (1) Emerick and the partnership, and (2) the partnership and the Coes are both executory contracts and the purchase price has not been fully paid under either contract. Legal title remains in Emerick.

 The fact that the executory contracts were recorded does not affect plaintiff's prior unrecorded equitable interest. RCW 65.08.080 provides that recording of an executory contract "shall be notice to all persons of the rights of the vendee under the contract." Such notice was described in *Kendrick v. Davis*, 75 Wn.2d 456, 464, 452 P.2d 222 (1969), as affecting only subsequently acquired interests and not antecedents in the chain of title:

> The recording of an instrument is constructive notice only to those parties acquiring interests subsequent to the filing and recording of the instrument. The recording of an instrument does not constitute notice to antecedents in the chain of title.

Plaintiff's interest is antecedent to that of the defendants Coe and the defendant partnership, neither of which are

bona fide purchasers and, therefore, is not affected by the recorded executory contracts of purchase.

Thus, we find as a matter of law that plaintiff is entitled to specific enforcement of his lease-option agreement and to recover damages for the breach of the hunting rights agreement.

This result is supported by the law of notice as it affects defendants' claims of status as bona fide purchasers. The contract of sale from Emerick to the defendant partnership clearly states that it is subject to the interest of the plaintiff under a rental agreement. As stated in *Hudesman v. Foley*, 73 Wn.2d 880, 891, 441 P.2d 532 (1968), the question arises

> as to whether the character and total content of the information which respondents may have timely acquired was such as would excite the apprehension of a person of average prudence and prompt or require a more diligent investigation of the circumstances than respondents presently contend they pursued and relied upon.

The record in this case indicates that the defendant partnership relied entirely upon the representation of Emerick as to the nature of plaintiff's interest and made no other inquiry. They did so at their peril because, in our view, these purchasers received such notice of plaintiff's interest as would "excite apprehension" in an ordinary mind and prompt or require a more diligent investigation of the circumstances. *Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960). Thus, the defendants are charged with knowledge of such information as a reasonable inquiry would have revealed, *i.e.*, plaintiff's hunting rights and lease agreement with option to purchase. *Hudesman v. Foley, supra* at 889.

The trial court erred in concluding that it was necessary for the defendants to have actual notice of plaintiff's prior interest. The court's thinking in this area is disclosed in its closing comments:

The only question is, was there notice. That is one of the

issues as I narrow the thing down; I mean, in looking at it from the four corners and checking the authorities and reviewing the evidence, that is what I come down to, and actually, it is, who do I believe?

We are not unmindful that "[q]uestions of credibility are uniquely and exclusively within the province of the trial court." *Miller v. McCamish*, 78 Wn.2d 821, 831, 479 P.2d 919 (1971). However, proper application of the law to the established facts of the case compels a different conclusion than that reached by the trial court.

The court found Emerick had represented that the agreements with the plaintiff were oral, that plaintiff was out of the country and would not return, and that he had not paid his rent, in all conveying the impression that the plaintiff and Emerick had simply made a friendly, informal agreement. The contract of purchase between Emerick and the defendant partnership clearly discloses that it is subject to plaintiff's "rental agreement" covering 9 acres of Emerick property. In concluding that the defendant partnership and later the defendants Coe did not have actual notice of plaintiff's interest at the time of their purchases, the court appears to be equating Emerick's misrepresentation of plaintiff's interest with lack of notice on the part of the defendants. The defendants' election to rely upon Emerick's representations does not remove their duty to make a prudent inquiry elsewhere as to the nature of plaintiff's interest. If defendants were misled by Emerick, their remedy is not to destroy the equitable interest of the plaintiff, but, rather, to recoup their damages from Emerick or as to the defendants Coe, from their immediate seller who warranted against plaintiff's interest.

Reversed and remanded for further proceedings in accordance with this opinion.

McINTURFF, C.J., and MUNSON, J., concur.