[No. 518-2.   Division Two.   March 3, 1972.]

DANIEL A. SNUFFIN et al., *Respondents*, v. LEO MAYO et al., *Appellants*.

*Dudley N. Perrine,* for appellants.

*Curtis H. Coons,* for respondents.

PEARSON, J.—Plaintiffs, Daniel and Sharon Snuffin, instituted an action for unlawful detainer in the Superior Court for Kitsap County against defendants, Leo Mayo and wife. Defendants now appeal the judgment entered in favor of plaintiffs. The sole question is who between plaintiff and defendant had the superior right to possession of 10 acres of berry farmland. We hold that defendant's right to possession was superior and judgment must be reversed.

Defendant, Leo Mayo, an immigrant from the Philippine Islands, has grown berries on land in Kitsap County since 1948. During the years, he has sold his produce to Northwest Berry Packers, Inc., owned substantially or entirely by Mr. and Mrs. Elmer Lorentsen.[1] It was claimed that, due to Mayo's lack of education and lack of familiarity with both business practices and the law, Elmer Lorentsen often had acted as Mayo's business advisor. In 1955, a bank foreclosed a mortgage on Mayo's 80-acre piece of property. Northwest Berry Packers purchased the 80 acres at the

---

[1] The exact extent of their ownership is not clear from the record.

foreclosure sale for $10,243.20, but contracted with Mayo to sell approximately 10 acres back to him for $7,500 ($600 down and $1,720 per year). Mayo was unable to make payment, and was also behind on a Farm Home Administration loan. At trial, he testified that when he asked Lorentsen what to do, Lorentsen indicated it would be to Mayo's benefit if the 10 acres were quitclaimed back to Northwest Berry Packers. Mayo signed a quitclaim deed in 1959, Northwest deeded the whole 80 acres to Lorentsen in March, 1968, and Lorentsen sold the land under real estate contract to Snuffin for $60,000 in December, 1968. It was established that since 1959 Mayo had paid no tax or insurance on the land, but had paid $900 per year rent, $1,350 of which had gone to Snuffin from 1968 until the unlawful detainer action was instituted. However, it was not clear that Mayo understood it was rent that he was paying.

On April 2, 1970, Snuffin served notice on Mayo to vacate the property not later than May 1, 1970. Mayo failed to do so, and Snuffin filed a complaint in unlawful detainer on May 7, 1970. At the trial, Mayo made a motion to join Lorentsen as a third-party defendant. That motion was denied. A considerable part of the trial involved the issue of whether or not Lorentsen held the 10 acres in a constructive trust for Mayo, due to Mayo's complete reliance upon his advice and guidance. In its conclusions of law, the trial court stated that there was no evidence of a constructive trust. Snuffins also had claimed that even if there were a constructive trust, they were protected as bona fide purchasers of the land in dispute. Many of the court's rulings on evidentiary matters were predicated on the premise that Snuffins were bona fide purchasers.

In our opinion, this premise was incorrect. A bona fide purchaser for value is one who, without notice of another's claim of right to, or equity in, the property *prior to his acquisition of title,* has paid the vendor a valuable consideration. *Chittick v. Boyle,* 3 Wn. App. 678, 479 P.2d 142 (1970); *Glaser v. Holdorf,* 56 Wn.2d 204, 352 P.2d 212

(1960). Snuffins, then, cannot be bona fide purchasers until they have acquired legal title. *Chittick v. Boyle, supra; Peterson v. Paulson,* 24 Wn.2d 166, 163 P.2d 830 (1945). In the present case, the 80 acres were purchased by executory contract. Snuffins have received only an equitable title, a promise that legal title will be executed and delivered upon full payment of the contract price. Legal title remains in Lorentsen and Snuffins' right to possession derives from whatever rights Lorentsen has as legal titleholder.

Due to the special nature of an unlawful detainer action, even though Snuffins' rights derived from the rights of Lorentsen, the court properly denied the motion to join Lorentsen as a third-party defendant.

An action for unlawful detainer is a creature of the legislature, unknown to common law. In such an action, the court has limited jurisdiction, and the only issue before it is the right to possession and its statutory incidents. *Kessler v. Nielsen,* 3 Wn. App. 120, 472 P.2d 616 (1970). In an unlawful detainer action, the court may do only two things, either dismiss the action or grant judgment for plaintiff, pursuant to RCW 59.12.120 or RCW 59.12.170. *Sundholm v. Patch,* 62 Wn.2d 244, 382 P.2d 262 (1963). It clearly had no authority to quiet title as between Mayo and Lorentsen (the legal titleholder), and therefore, there was no reason to include him in the lawsuit. *See Proctor v. Forsythe,* 4 Wn. App. 238, 480 P.2d 511 (1971). It was proper, however, to hear the issue of constructive trust. Even though offsets or counterclaims cannot be asserted in an unlawful detainer action, equitable defenses can be raised. *Motoda v. Donohoe,* 1 Wn. App. 174, 459 P.2d 654 (1969); *Himpel v. Lindgren,* 159 Wash. 20, 291 P. 1085 (1930). A constructive trust is clearly an equitable defense and as Snuffins' rights derived from those of Lorentsen, the resolution of that issue was necessary to a determination of right to possession.[2]

---

[2]The problems raised by the implementation of such a limited statutory remedy in this case are compounded if the question is posed —would Mayo be collaterally estopped to assert a constructive trust in

While the trial court was on sound legal grounds in dismissing the third-party complaint and in hearing the issue of constructive trust, it is our opinion that the unlawful detainer action itself should have been dismissed for Snuffins' failure to comply with RCW 59.12.035:

> In all cases of tenancy upon agricultural lands, where the tenant has held over and retained possession for more than sixty days after the expiration of his term without any demand or notice to quit by his landlord or the successor in estate of his landlord, if any there be, he shall be deemed to be holding by permission of his landlord or the successor in estate of his landlord, if any there be, and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold for another year.

There are three basic requirements that must be met under the statute before it is applicable: (1) the land in issue must be agricultural land; (2) the tenancy must be from year to year;[3] and (3) the landlord or the successor must fail to notify the tenant within the first 60 days after the expiration of the previous term that he is to vacate the land.

There can be no doubt that in the present case those three requirements were met. The land in issue was clearly agricultural land, as Leo Mayo had grown berries on it as his livelihood since 1948. Mayo did possess the property by virtue of a year-to-year tenancy, according to Snuffin's theory. The notice terminating the tenancy (plaintiffs' exhibit A) states that Mayos held as tenants on a yearly rental basis of $900 per year, and the trial court so found as well (finding of fact 1). Finally, as to the third require-

---

a later lawsuit against Lorentsen, given the conclusion in the present case that no constructive trust exists?

[3] Although this is not an explicit requirement in the statute, the statute does speak in terms of a yearly tenancy. *Also see MacDonald v. Potts,* 132 Wash. 59, 231 P. 164 (1924); C. Peck, *Landlord and Tenant Notices,* 31 Wash. L. Rev. 51 (1956).

ment, it should be pointed out that notice may be oral or written, as the notice requirement under RCW 59.12.035 is for the limited purpose of preventing the commencement of a new tenancy, and not a summons for an unlawful detainer action. *Smeltzer v. Webb,* 101 Wash. 568, 172 P. 750 (1918); *MacRae v. Way,* 64 Wn.2d 544, 392 P.2d 827 (1964). Nevertheless, in the present case, the notice terminating tenancy was not delivered until April 2, 1970 (more than 60 days after the expiration of the previous term on December 31, 1969) and there is no evidence of an oral notice prior to April 2, 1970.[4]

It is true that Mayos never moved to dismiss the unlawful detainer action based on RCW 59.12.035, and in many situations this would be sufficient to support an assertion that they have waived the defense. The statute, however, states that unless notice is given within 60 days after the term has expired, the tenant "shall not be guilty of an unlawful detainer during said year," not that an unlawful detainer action does not lie. This language, coupled with the fact that the court has very limited jurisdiction in an unlawful detainer action (*Kessler v. Nielsen, supra; Sundholm v. Patch, supra*) requires a reversal and dismissal of the action for failure to comply with RCW 59.12.035.

Snuffin may, however, bring another unlawful detainer action at a future date if the requirements of RCW 59.12.035 and the unlawful detainer statutes are met. Mayos may also bring an action against Lorentsen to quiet title in themselves, based on a constructive trust theory.[5] Neither course of action is foreclosed by dismissal of this action.

Reversed and remanded for dismissal of Snuffins' action.

PETRIE, C.J., and ARMSTRONG, J., concur.

---

[4]It is also noteworthy that plaintiff's exhibit 6 shows that rent was collected and paid to Snuffin on August 6, 1970 for the full year of 1970.

[5]The trial court indicated in its oral ruling that "If this suit were between Lorentsen and Mayo, there might be another result possible."