# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL L. ROESCH, | No. 48083-2-II |
| Appellant, | |
| v. | |
| CARL BOHM and CANDY BOHM, | UNPUBLISHED OPINION |
| Respondents. | |

JOHANSON, J. — Michael Roesch appeals the jury's verdict in an unlawful detainer action that Carl and Candy Bohm were excused from paying Michael rent.[1] We hold that the trial court did not exceed its subject matter jurisdiction and accordingly that it properly admitted the challenged exhibits and instructed the jury. Because we hold that there was substantial and competent evidence to support the verdict, we also hold that the trial court properly denied the CR 50 motions, denied the CR 59(a) motion, entered the order on the jury verdict, and awarded attorney fees to the Bohms. For these reasons, we affirm.

---

[1] For clarity, where appropriate, we refer to the Bohms and to Fred and Michael Roesch by their first names. The Bohms divorced in 2014; Candy testified that as part of the divorce, she received all of Carl's interest in the property located at 72nd Street in Sumner (the Roesch property).

## FACTS

### I. BACKGROUND FACTS

At all relevant times, Michael held title to property located on 72nd Street in Sumner (the Roesch property) that was subject to two mortgages. The Bohms owned property on 60th Street E. in Sumner (the Bohm property) subject to a mortgage. Candy's parents, Hillard and Geraldine Rudolph, owned adjoining property on 60th Street E. (the Rudolph property).

In 2008, Michael's brother, Fred, offered to buy the Bohm and Rudolph properties. The Bohms and the Rudolphs were willing to sell if they could obtain another property where they could all reside. The parties entered into a convoluted series of real estate transactions that resulted in the Bohms and the Rudolphs moving to the Roesch property in November 2009. After this "land swap," Michael continued to own the Roesch property and Fred acquired the Rudolph property. 3 Report of Proceedings (RP) at 324. Fred agreed to purchase the Bohm property, but that property was ultimately foreclosed upon.

### II. PROCEDURAL BACKGROUND

In April 2015, Michael filed an unlawful detainer complaint alleging that the Bohms resided on the Roesch property and had failed to pay monthly rent to him since October 2012. Michael then filed a motion for an order to show cause why he should not obtain a writ of restitution that would restore possession of the Roesch property and be awarded damages for unpaid rent. A superior court commissioner determined that there was a significant issue as to the right of possession of the Roesch property, denied the writ of restitution, and directed the parties to secure a trial date.

Candy filed an amended answer in which she alleged counterclaims against both Michael and Fred. The trial court dismissed these counterclaims because they exceeded the limited subject matter jurisdiction in an unlawful detainer action.[2] At Michael's summary judgment hearing, the trial court stated that the only issues that the jury could consider were whether there was an enforceable lease and whether the Bohms had an excuse for nonpayment.

### III. EVIDENTIARY RULINGS

The Bohms proposed to admit, as relevant here, 11 exhibits consisting of real estate purchase and sale agreements (REPSA) and related addenda regarding the Roesch, Bohm, and Rudolph properties' anticipated sales.[3] The trial court admitted the REPSA and addenda exhibits during trial. Michael contemporaneously stated that he had no objection to the admission of exhibits 9, 12, and 23 through 26.

### IV. TRIAL TESTIMONY

### A. MICHAEL'S TESTIMONY

Michael testified that he owned the Roesch property, which was subject to mortgages. The Bohms resided at the Roesch property prior to the anticipated closing of that property's sale under the terms of rental agreements that the Bohms had signed. Michael instituted the unlawful detainer

---

[2] The trial court also denied Candy's motion to have Geraldine Rudolph intervene and to join Fred as a third party defendant. At the intervention hearing, the trial court recognized that the case was "much more complicated than just simply a landlord tenant" dispute. 1 RP at 5. And the trial court expressed that the Bohms should have an opportunity to explain the circumstances under which they were living so they could present "an excuse for not paying." 1 RP at 10.

[3] We refer to these exhibits collectively as the "REPSA and addenda exhibits."

action and sought to collect unpaid rent beginning in October 2012 because he "[became] aware that the payments required under" the rental agreements' terms were not being made. 2 RP at 142.

During cross-examination, Michael testified that the rental agreements were part of the final REPSA between the Bohms and Michael contracting to sell the Roesch property to the Bohms upon the Rudolph property's resale or refinance. This final REPSA regarding the Roesch property stated that it would terminate "10/15/2010 Upon resale or refinace [sic] of" the Rudolph property. Clerk's Papers (CP) at 768. The rental agreements attached to this REPSA similarly stated that they would terminate on October 15, 2010.

Michael had never received any rent payments from the Bohms, although the Bohms made monthly payments required under the lease to someone other than Michael. Michael had indirectly benefited because those payments were in some manner applied toward the mortgages on the Roesch property.

B. THE BOHMS' EVIDENCE

1. BROKER'S TESTIMONY

A real estate broker who assisted in preparing some of the REPSAs testified for the Bohms and explained the anticipated property sales' interrelation. Fred wanted to buy the contiguous Rudolph and Bohm properties in order to develop them. And the Bohms and the Rudolphs were willing to sell if they acquired the Roesch property in return. As expressed in initial REPSAs that governed the Roesch and Bohm properties' sales, it was not intended that the Bohms would have to pay out of pocket to acquire the Roesch property. Fred also wanted the Bohms and the Rudolphs to adjust their boundary line to enlarge the Rudolph property.

The Bohms and the Rudolphs adjusted their boundary line pursuant to the parties' agreements, and Fred ultimately purchased the Rudolph property. After the Rudolphs received the sale proceeds, they wrote a check for the same amount to Fred.

The Bohms had agreed to sell the Bohm property to Fred, and accordingly, they and the Rudolphs moved to the Roesch property. In an addendum to REPSAs governing the Rudolph and Roesch property sales, Fred agreed to make all future Bohm property mortgage payments. However, Fred did not make those payments, and the Bohm property was foreclosed upon. The Bohm property's sale to Fred never closed.

The Roesch property's sale to the Bohms did not close either because closing was conditioned on Fred reselling or refinancing the Rudolph property, which never occurred. Fred was to use the funds from the resale or refinance to pay off the Roesch property mortgage so that the Bohms could obtain unencumbered title.

The broker also testified that the final REPSA in which the Bohms had agreed to purchase the Roesch property was conditioned on the Bohms' obtaining a loan to pay off the Roesch property mortgages. But the parties never intended for the Bohms to obtain that loan because the money to pay off the mortgages was to come from Fred.

The Bohms began making payments on a total of between $70,000 and $80,000 to compensate Fred for making improvements on the Roesch property.[4] These payments were approximately $790 monthly.

---

[4] This amount also included the cost to Fred of paying an overage on a reverse mortgage encumbering the Rudolph property when Fred purchased that property.

2.     THE BOHMS' AND THE RUDOLPHS' TESTIMONY

The Bohms testified that they and the Rudolphs sought to sell their properties in exchange for the Roesch property and that the Rudolphs agreed to a boundary line adjustment pursuant to the Rudolphs' agreement to sell Fred the Rudolph property. It was never intended for the Bohms to pay out of pocket to acquire the Roesch property; Fred was supposed to satisfy the Roesch property mortgages. The Bohms were never required to obtain a loan to pay off those mortgages. The Rudolphs repaid Fred the proceeds from the Rudolph property's sale so that Fred would use that amount to pay off the Roesch property mortgages.

The Bohms never made—or were required to make—any rent payments to Michael despite the rental agreements' terms. The Bohms did make monthly payments, which were "house payments," to Fred on a total of approximately $77,000, including amounts compensating Fred for making improvements to the Roesch property. 3 RP at 438. The Bohms continued to make these payments even after October 2010, the closing date for the Roesch property under the final REPSA, because they still believed that Fred would pay off the Roesch mortgages. But the Bohms stopped making payments to Fred in September 2012 for the work that he had done. Their excuse for nonpayment was that Fred stopped providing receipts for the improvements that he claimed he had made on the Roesch property. Further, their payments served to increase the Roesch property's equity without any corresponding benefit to themselves.

V. MICHAEL'S MOTION FOR JUDGMENT

Following the Bohms' case, Michael moved for judgment as a matter of law under CR 50(a). The trial court denied Michael's motion and orally ruled that there was sufficient evidence for the jury to consider.

VI. JURY INSTRUCTIONS

The jury instructions included a summary of the parties' claims as instruction 2.

(1)  The plaintiff, [Michael] has brought this case as an unlawful detainer action, asserting that the Defendants, the Bohms, have failed to pay rent payments that [Michael] asserts are owed to him pursuant to a Rental Agreement and that he is, therefore, entitled to have possession of the [Roesch property] restored to him.

(2)  The [Bohms] deny that [Michael] is entitled to possession of the property or that they are obligated to make any rent payments to the Plaintiff.  The [Bohms] also assert that [Michael] has failed to meet his obligations owing to them under the terms of a Real Estate Purchase and Sale Agreement of which the Rental Agreement was a part.

(3)  The Defendant [Candy] has also asserted that they entered into agreements with the Plaintiff's brother, [Fred] and that [Fred] has breached his obligations owing to the Defendant, [Candy] in failing to pay off the mortgage obligations owing against the subject property and then transferring to [Candy] title [to] the subject property, excusing her from making any further payments to either of them and entitling her to the continued right of possession of the [Roesch property].

(4)  [Michael] denies these claims.

CP at 970.  The trial court included paragraphs (2) and (3) in the instruction despite Michael's objection that those paragraphs exceeded the court's jurisdiction.

Instruction 11 listed the propositions that the Bohms had to prove to prevail on their affirmative equitable defense (the excuse for nonpayment):

(1)     That [the Bohms] entered into Agreements with [Fred];
(2)     *That the terms of the Agreements included an obligation on the part of [Fred] to pay off the mortgage obligations on the [Roesch property] and provide for [Michael] to transfer title to this property to the Bohms;*
(3)     That [Fred] breached the Agreement in one or more of the ways claimed by [Candy];
(4)     That [the Bohms] were not in breach of their obligations under the Agreements with [Fred] or were excused from their obligations;
(5)     That [Candy] was damaged as a result of [Fred's] breach.
         If you find from your consideration of all the evidence that this affirmative defense has been proved, your verdict should be for the Bohms on this claim.  On the other hand, if this affirmative defense has not been proved, then your verdict should be for [Michael] on this claim.

7

CP at 979-80 (emphasis added).

The trial court overruled Michael's objection to the italicized paragraph on the basis that it was not related to the issue of the premises' possession. However, the trial court declined to instruct the jury regarding any affirmative defenses other than the Bohms' excuse for nonpayment.

## VII. VERDICT AND ATTORNEY FEES

The jury returned a special verdict in which it found that the Bohms were "excused from making rental payments on the [l]ease."[5]  4 RP at 551. Pursuant to the verdict, the trial court dismissed Michael's unlawful detainer claim with prejudice. The trial court found that the Bohms and Michael had agreed as part of these transactions that the prevailing party in litigation would be entitled to reasonable attorney fees and awarded fees to the Bohms.

## VIII. RENEWED MOTION FOR JUDGMENT AND MOTION FOR NEW TRIAL OR RECONSIDERATION

After the trial, Michael renewed his motion for judgment under CR 50(b) and moved for a new trial or reconsideration under CR 59(a)(1), (6) through (9). In his CR 59(a) motion, Michael argued that the REPSA and addenda exhibits' admission exceeded unlawful detainer's limited subject matter jurisdiction. Michael also renewed his CR 50(a) arguments that there was no evidence to support the jury's verdict.

The trial court denied both motions and reasoned that it was immaterial whether or not the REPSAs had expired because those agreements explained why the Bohms thought that they were excused from making payments under the lease.

---

[5] The trial court denied the Bohms' subsequent motion to adjust the jury verdict to state that the Bohms had the right to the Roesch property's possession because "the jury wasn't asked . . . how they would have answered who has the right to possess. The jury was asked, do they have an excuse for not paying."  4 RP at 602-03.

8

ANALYSIS

I. SUBJECT MATTER JURISDICTION

Underlying Michael's arguments is his contention that the trial court exceeded unlawful detainer's limited subject matter jurisdiction when it allowed the Bohms to explain why they were excused from paying rent.[6] We disagree.

A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

We review de novo whether a trial court had subject matter jurisdiction over a controversy. *Angelo Prop. Co. v. Hafiz*, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012). Lack of subject matter jurisdiction renders a trial court powerless to decide a case. *Angelo Prop. Co.*, 167 Wn. App. at 808.

The subject matter jurisdiction in unlawful detainer is limited because unlawful detainer is a summary proceeding for recovering leased property's possession. *Angelo Prop. Co.*, 167 Wn. App. at 808; *see* RCW 59.12.030. The proceeding is "'limited to the question of possession and related issues such as restitution of the premises and rent.'" *Angelo Prop. Co.*, 167 Wn. App. at 809 (quoting *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985)). Thus, the parties in an unlawful detainer action may not litigate claims to title. *Puget Sound Inv. Grp., Inc. v. Bridges*, 92 Wn. App. 523, 526, 963 P.2d 944 (1998).

The defendant in an unlawful detainer action may "assert any legal or equitable defense or set-off arising out of the tenancy." RCW 59.18.380. In order to protect unlawful detainer's

---

[6] In his reply brief, quoting *People's National Bank of Washington v. Ostrander*, 6 Wn. App. 28, 31, 491 P.2d 1058 (1971), Michael briefly argues that the usual legal remedies were available to the Bohms so that they were not entitled to an affirmative equitable defense. We decline to address this argument because it is first raised in Michael's reply brief. *See* RAP 10.3(c).

summary nature, defenses "'arise out of'" a tenancy only if they affect the right of possession or are based on facts excusing the tenant's breach. *Josephinium Assocs. v. Kahli*, 111 Wn. App. 617, 625, 45 P.3d 627 (2002) (quoting *Munden*, 105 Wn.2d at 45). When the unlawful detainer action is based upon the tenant's failure to pay, we look to whether there is a "'legal justification for nonpayment.'" *Josephinium Assocs.*, 111 Wn. App. at 625 (quoting *Heaverlo v. Keico Indus., Inc.*, 80 Wn. App. 724, 731, 911 P.2d 406 (1996)).

### B. THE BOHMS' AFFIRMATIVE EQUITABLE DEFENSE

### 1. MATTERS THAT "ARISE OUT OF" THE TENANCY

Michael argues that only a "very narrow range of matter[s]" "'*aris[e] out of*'" the tenancy and excuse a tenant from paying rent and that the Bohms' affirmative defense of nonpayment falls outside that range. Br. of Appellant at 24-25 (quoting RCW 59.18.380). We disagree.

It is well established that an unlawful detainer action is narrow in scope. *See Josephinium Assocs.*, 111 Wn. App. at 624. Nevertheless, trial courts must consider a defense that "arises out of the tenancy." *Josephinium Assocs.*, 111 Wn. App. at 625. Thus, our courts have permitted tenants to assert affirmative equitable defenses that are based on facts excusing a tenant's breach. *Munden*, 105 Wn.2d at 45; *see Josephinium Assocs.*, 111 Wn. App. at 626-27; *Port of Longview v. Int'l Raw Materials, Ltd.*, 96 Wn. App. 431, 444, 979 P.2d 917 (1999).

At trial, the Bohms provided evidence that the agreement between the Bohms, the Rudolphs, and Fred and Michael included an obligation on Fred's part to pay off the Roesch property mortgages so that the Bohms could acquire unencumbered title to the Roesch property from Michael. The testimony was uncontroverted that Fred had not done so. The Bohms maintained that their agreements with Fred and Michael did not include an obligation to pay

Michael rent but only an obligation to make "house payments" to Fred. 3 RP at 438. The Bohms' defense was that Fred's breach of his obligations under the overall agreement excused them from their obligations to Fred.

The Bohms' defense, if believed, established that they had a legal justification for nonpayment. *See Josephinium Assocs.*, 111 Wn. App. at 625. The Bohms defended on the basis that Fred's failure to enable Michael to transfer the Roesch property's title to them excused them from any obligation to make payments to either Fred or Michael. This defense "aris[es] out of the tenancy" because it was based upon facts that excused the Bohms' breach, and therefore the trial court was required to consider it. RCW 59.18.380; *Josephinium Assocs.*, 111 Wn. App. at 625. Thus, the Bohms' excuse for nonpayment was within the limited subject matter jurisdiction in an unlawful detainer action.[7]

2.      NOT LITIGATION OF "TITLE"

Next, Michael argues that the trial court erred because it allowed the Bohms to litigate the Roesch property's title despite having dismissed their counterclaims. Again, we disagree.

---

[7] Michael cites to several cases involving equitable affirmative defenses or counterclaims in unlawful detainer actions as support for the proposition that "only a very narrow range of matter" excuses nonpayment of rent. Br. of Appellant at 25. But only one of these cases barred breach of contract as a counterclaim or affirmative defense in an unlawful detainer action. *Savings Bank of Puget Sound v. Mink*, 49 Wn. App. 204, 209, 741 P.2d 1043 (1987). In *Savings Bank*, Division One affirmed the dismissal of a homeowner's litany of counterclaims and affirmative defenses related to a trustee's conflict of interest, including a breach of contract claim, in a postforeclosure unlawful detainer action. 49 Wn. App. at 209. The appellate court stated that the counterclaims and defenses "do not directly relate to the 'question of possession.'" *Savings Bank*, 49 Wn. App. at 209. But *Savings Bank* is distinguishable. The breach of contract claim derived from a conflict of interest claim. *Savings Bank*, 49 Wn. App. at 209-10. And while a conflict of interest could be a basis for destroying the purchaser's right of possession, the homeowner failed to support the conflict of interest or related claims with evidence. *Savings Bank*, 49 Wn. App. at 210.

Before trial, the trial court dismissed the Bohms' counterclaims as outside unlawful detainer's limited subject matter jurisdiction. The trial court orally ruled that "the only issue . . . is was there a lease, was it enforceable, [and] did [the Bohms] have a reason to stop paying?" 1 RP at 96. But the trial court noted that its dismissal of the counterclaims would not foreclose the Bohms from having an opportunity to explain why they did not have any obligation to pay.

*Snuffin v. Mayo* supports the conclusion that the trial court did not err. 6 Wn. App. 525, 494 P.2d 497 (1972). There, we held that a trial court could hear an affirmative equitable defense despite unlawful detainer's statutorily limited jurisdiction. *Snuffin*, 6 Wn. App. at 528. Although the trial court "had no authority to quiet title" to the land at issue, that did not foreclose the court from determining whether another party held the land in constructive trust for the defendant. *Snuffin*, 6 Wn. App. at 528. "A constructive trust is clearly an equitable defense and as [the plaintiffs'] rights derived from those of [the alleged constructive trustee], the resolution of [the constructive trust] issue was necessary to a determination of right to possession." *Snuffin*, 6 Wn. App. at 528. Thus, a trial court may still consider a defendant's affirmative equitable defense even if that defense overlaps somewhat with title-related issues. *See Snuffin*, 6 Wn. App. at 528.

Here, similarly to *Snuffin*, the Bohms' affirmative equitable defense—their excuse for nonpayment—overlapped with title-related issues. Determining whether Fred had breached his obligations was necessary to determining whether the Bohms were excused from making payments. Nevertheless, the affirmative equitable defense remained within the trial court's subject matter jurisdiction. *See Snuffin*, 6 Wn. App. at 528.

Michael asks this court to assume that because the trial court admitted some of the same exhibits the Bohms relied on as evidence of their dismissed counterclaims, the jury necessarily

determined the Roesch property's title. But Michael fails to explain how the REPSA and addenda's mere admission amounted to litigating title. Although the excuse for nonpayment overlapped with title issues, the jury's verdict shows that the unlawful detainer action resolved only one matter: whether the Bohms were "excused from making rental payments on the [l]ease." CP at 989. We reject Michael's arguments to the contrary.

We hold that the trial court did not exceed its subject matter jurisdiction because it properly allowed the Bohms to present an affirmative equitable defense arising out of the lease and presenting a legal justification for nonpayment.

## II. ISSUES RELATED TO SUBJECT MATTER JURISDICTION

Michael argues that the trial court erred when it (1) admitted the REPSA and addenda exhibits and (2) included certain jury instructions because the trial court exceeded unlawful detainer's limited subject matter jurisdiction. As discussed above, we hold that the trial court did not exceed its subject matter jurisdiction; thus, we reject Michael's evidentiary and jury instruction arguments because he relies solely upon his failed argument that the trial court exceeded its subject matter jurisdiction.[8]

## III. MOTIONS FOR JUDGMENT AS A MATTER OF LAW

Michael contends that the trial court erred when it denied his CR 50 motions. Again, we reject his arguments.

---

[8] Further, Michael waived his objections to exhibits 9, 12, and 23 through 26's admission when he stated at trial that he had no objection to these exhibits' admission.

## A.  STANDARD OF REVIEW AND APPLICABLE LAW

We review de novo the denial of judgment as a matter of law, applying the same standard as the trial court.  *Paetsch v. Spokane Dermatology Clinic, PS*, 182 Wn.2d 842, 848, 348 P.3d 389 (2015).  Judgment as a matter of law should be granted only when "no competent and substantial evidence exists to support a verdict."  *Paetsch*, 182 Wn.2d at 848.  We construe all facts and reasonable inferences in the nonmoving party's favor.  *Paetsch*, 182 Wn.2d at 848.

## B.  FRED OBLIGATED TO PAY BOHM PROPERTY MORTGAGE

Michael claims that the final REPSA governing the Roesch property's purchase superseded all other agreements and contained no obligation on Fred's part to pay the Bohm property mortgage.  Thus, Michael argues that there was no evidence before the jury that Fred had an obligation to pay the Bohm property mortgage.  This argument fails.

The final REPSA regarding the Roesch property sale states that the closing date was "10/15/2010 Upon resale or refinace [sic] of" the Rudolph property.  CP at 768.  The Rudolph property was never resold or refinanced.  The rental agreements attached to this REPSA terminated by their own terms on October 15, 2010.  Thus, both the final REPSA governing the Roesch property sale and the attached rental agreements had terminated nearly two years before September 2012, when the Bohms ceased making payments to Fred.

Michael's arguments fail to explain why the REPSA and addenda, none of which were still in force when the Bohms ceased making payments, were not admissible to provide background explaining the parties' obligations after October 2010.  Thus, Michael fails to establish that the final Roesch property REPSA alone should be considered in determining whether Fred had an obligation to pay the Bohm property mortgage.  Michael's arguments also ignore the broker's trial

testimony that Fred agreed to make the Bohm property mortgage payments and then failed to do so.

Further, even if there were no evidence that Fred had an obligation to pay off the Bohm property mortgage, that argument fails to establish that there was no competent and substantial evidence to support the verdict. The Bohms defended their failure to pay rent on the basis of Fred's failure to pay the Roesch mortgages, not Fred's failure to pay the Bohm property mortgage. Thus, Michael's argument that there is no evidence of Fred's breach of an obligation to pay the Bohms' mortgage and thus that there is no evidence to support the jury's verdict must fail.

C. THE BOHMS NOT REQUIRED TO OBTAIN LOAN AS A CONDITION PRECEDENT

Next, Michael argues that the final Roesch property REPSA required the Bohms to obtain a loan as a condition precedent to the Roesch property's sale, which the Bohms admitted they never did. Thus, Michael claims that he no longer had a duty to close on the Roesch property sale. We reject Michael's arguments.

To prevail on their affirmative equitable defense, the Bohms had to prove, among other things, that they "were not in breach of their obligations under the Agreements with [Fred] or were excused from their obligations." CP at 980. As discussed in the previous section, the final Roesch property REPSA requiring the Bohms to obtain the loan expired "10/15/2010 Upon resale or refinace [sic] of" the Rudolph property. CP at 768. Michael fails to explain why the expired REPSA's terms are dispositive to understanding the parties' existing overall agreement's terms.

The Bohms presented evidence that they were not obligated to obtain a loan for the Roesch property purchase. For example, the real estate broker who facilitated the agreements testified that it was the parties' intent that the Bohms would not pay out of pocket to acquire the Roesch property

and that the Bohms were never obligated to obtain that loan because the money to pay off the mortgages was to come from Fred.[9] The Bohms similarly testified that they were never required to obtain a loan. Thus, there was competent and substantial evidence to support the Bohms' contention that they were not required to obtain a loan as a condition precedent to the Roesch property purchase. Accordingly, there was substantial evidence that the Bohms were not in breach of their obligations or were excused from those obligations, one of the elements that the Bohms had to prove to prevail on their affirmative equitable defense. We reject Michael's arguments to the contrary.

### D. FRED TO PAY ROESCH PROPERTY MORTGAGES

Michael also claims that the Bohms failed to provide any evidence of oral or written agreements with Fred that Fred would apply the Rudolph property sale's proceeds toward the Roesch property mortgages other than exhibit 7, an expired REPSA. This argument fails.

To prevail on their affirmative equitable defense, the Bohms had to establish, among other things, that "the terms of the Agreements included an obligation on the part of [Fred] to pay off the mortgage obligations on the [Roesch property] and provide for [Michael] to transfer title to this property to the Bohms." CP at 980. Michael is incorrect that the Bohms failed to provide evidence that the agreements' terms included an obligation for Fred to pay the Roesch property mortgages. The Bohms both testified that the parties agreed that Fred would satisfy the existing Roesch property mortgages. This agreement was also reflected in exhibit 7, an older REPSA in

---

[9] Michael objects that this is impermissible parol evidence used to contradict the final Roesch property REPSA's terms. But the broker's testimony was not offered to contradict a valid agreement's terms; it was offered to explain the terms of the parties' agreement after the final Roesch property REPSA had terminated.

which the Bohms agreed to purchase the Roesch property. And as discussed, although this REPSA expired, it, like the other REPSA and addenda, is competent and substantial evidence of the parties' overall agreement when the Bohms ceased to make payments.

Further, the final REPSA between Michael and the Bohms regarding the Roesch property sale itself provides support for Fred's obligation to pay off the Roesch property mortgages. This REPSA's terms conditioned the Roesch property sale's closing on Fred's resale or refinance of the Rudolph property. Thus, it was a reasonable inference from this REPSA's terms that the resale or refinance funds were necessary before the Roesch property closing could occur because Fred was to use the Rudolph property resale or refinance funds to pay off the Roesch property mortgages. For these reasons, there was competent and substantial evidence to support Fred having an obligation to pay off the Roesch property mortgages as part of the agreement under which the Bohms lived on the Roesch property.

Because all of Michael's arguments fail, it cannot be said that "no competent or substantial evidence exists to support a verdict." *Paetsch*, 182 Wn.2d at 848. Viewing the evidence in the light most favorable to the Bohms and drawing reasonable inferences from that evidence, the Bohms established substantial evidence supporting their affirmative equitable defense, including that they were not in breach of their obligations under the agreements and that Fred had an obligation to pay the Roesch property mortgages. The trial court properly denied Michael's CR 50 motions.

IV. CR 59(A) MOTION AND FINAL VERDICT

Relying entirely upon his subject matter jurisdiction and lack of substantial evidence arguments, Michael argues that the trial court abused its discretion when it denied his CR 59(a)

17

motion for new trial or reconsideration and erred when it entered its order on the jury verdict that dismissed the unlawful detainer action with prejudice. These arguments necessarily fail.

We review a trial court's denial of a CR 59(a) motion for abuse of discretion. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). CR 59(a) permits a trial court to grant a motion for new trial or reconsideration if the moving party establishes one of the following grounds:

> (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
> . . . .
> (6) Error in the assessment of the amount of recovery whether too large or too small, when the action is upon a contract, or for the injury or detention of property;
> (7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
> (8) Error in law occurring at the trial and objected to at the time by the party making the application; or
> (9) That substantial justice has not been done.

In his CR 59(a) motion, Michael argued that the trial court exceeded its subject matter jurisdiction when it allowed the Bohms to assert their affirmative equitable defense. Thus, he moved for a new trial or reconsideration under CR 59(a)(1), (6), (8), (9). Michael also argued that there was no evidence to support the verdict and relied on his motion for judgment as a matter of law. Michael moved for a new trial under CR 59(a)(7). CP at 1107.

For the reasons discussed above, we hold that the trial court did not exceed its subject matter jurisdiction. Accordingly, we hold that the trial court did not abuse its discretion when it rejected Michael's CR 59(a)(1), (6), (8), and (9) arguments. And because there was substantial evidence to support the jury's verdict, the trial court did not abuse its discretion when it rejected Michael's CR 59(a)(7) argument. Finally, we reject Michael's argument that the trial court erred

18

in entering the order on the jury verdict because, as discussed, Michael's subject matter jurisdiction and CR 50 arguments fail.

## V. TRIAL COURT'S ATTORNEY FEES AWARD

Michael argues that because the trial court allegedly exceeded its subject matter jurisdiction in this action, the Bohms have not "prevailed," and we should reverse the trial court's attorney fee award to the Bohms. But as discussed, the trial court did not commit error, and the Bohms were the prevailing party at trial. Michael does not dispute the trial court's basis for awarding attorney fees to the "prevailing party." Accordingly, we affirm the trial court's attorney fee award.

## VI. APPELLATE ATTORNEY FEES

The parties agree that the prevailing party is entitled to appellate attorney fees, but each claims to have prevailed. We award the Bohms their attorney fees on appeal.

"Where a statute authorizes fees to the prevailing party, they are available on appeal as well as in the trial court." *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 716, 9 P.3d 898 (2000). RCW 4.84.330 mandates a fee award to the "prevailing party" "[i]n any action on a contract or lease . . . where such contract or lease specifically provides that attorneys' fees and costs" in enforcing the contract's or lease's provisions be awarded to the prevailing party.

The final Roesch property REPSA provides that if either party employs an attorney "to enforce any terms of this Agreement," the prevailing party is entitled to reasonable attorney fees. CP at 781, 783. Because neither party disputes that the prevailing party on appeal is entitled to their attorney fees and because we hold that the Bohms prevail, we award the Bohms their reasonable attorney fees on appeal.

No. 48083-2-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.