# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| UNION STREET HOLDINGS, LLC, | ) | No. 76015-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SOUTH SOUND CHARITIES, INC. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| SOUTH SOUND SPORTS | ) | |
| MANAGEMENT, LLC; SOUTH SOUND | ) | |
| SPORTS VENTURES, INC., | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendants. | ) | FILED: May 22, 2017 |
| | ) | |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 MAY 22 AM 10: 04
FILED

MANN, J. — After South Sound Sports Management (Management) defaulted on a loan of $3.46 million, its property was sold at a nonjudicial foreclosure sale and purchased by Union Street Holdings, LLC (Union Street). After the tenant, South Sound Charities (Charities), failed to timely vacate the property, Union Street brought an action for unlawful detainer. The trial court commissioner allowed Charities to continue its occupation of the property for one month conditioned on Charities making two timely payments. At the conclusion of the extended occupation, Charities sought a further

extension. The trial court denied Charities' request and ordered it to vacate the property.

Charities appeals raising several procedural claims and asking that this matter be reversed and its possession restored. While this appeal was pending, Union Street conveyed the property at issue to a third party. Because we cannot restore Charities' claimed possession as against the new nonparty owner, we can no longer provide effective relief. The majority of Charities' claims are therefore moot. To the extent Charities is seeking recovery of some or all of the payments made during its holdover occupation, any claim of error was both invited and was not raised before the trial court.

We affirm.

I

A.    Deed of Trust and Foreclosure

Fortune Bank, the predecessor in interest to HomeStreet Bank (HomeStreet), extended a $3,460,000 loan to Management. The loan was secured with a deed of trust on the property at 7845 South Pine Street, Tacoma, WA 98409 (the property). The deed was recorded on November 7, 2011. Management originally leased the property to South Sound Sports Ventures, Inc. (Ventures) who used the property to operate indoor adult and youth soccer leagues. The lease between Management and Ventures was entered on November 4, 2011, and signed by Marian Bowers for both parties. Fortune Bank approved the lease to Ventures at the inception of the loan. The security agreement between Fortune Bank and Ventures required Ventures to provide written notice prior to Ventures changing its legal structure, organization, or name.

-2-

In April 2013, a $492,141 judgment was entered against Ventures that it could not pay. On June 20, 2013, Ventures terminated its lease and Management entered into a new lease for the property with Charities. Bowers signed the lease for both Management and Charities. Charities was organized and operated as a successor to Ventures.[1] Management, Ventures, and Charities were all three managed and/or owned by Robert and Marian Bowers. Management, Ventures, and Charities did not seek written approval or provide written notice to Fortune Bank or HomeStreet prior to entering into the new lease. The lease between Management and Charities was never recorded.

Shortly after entering the new lease, Management defaulted on its loan from HomeStreet and filed for Chapter 11 bankruptcy protection. The bankruptcy court granted HomeStreet, as successor by merger to Fortune Bank, relief from the automatic stay, thereby authorizing HomeStreet to proceed with its nonjudicial foreclosure of the property. HomeStreet provided notice of the foreclosure sale to Management, as the grantor for the deed of trust, Ventures, as the original tenant, and Marian Bowers, who signed the leases between Management and Ventures and Management and Charities.

On January 8, 2015, HomeStreet assigned the rights and title to the deed of trust to its wholly owned subsidiary, Union Street Holdings, LLC (Union Street). The assignment document was notarized January 21, 2015.

The nonjudicial foreclosure sale was conducted on January 16, 2015. The trustee, RTS Pacific, Inc., granted and conveyed a trustee's deed to the highest bidder,

---

[1] On December 19, 2014, a Pierce County court ruled that Charities was a mere continuation of Ventures, and judgment was entered against it for the $492,141.

-3-

Union Street. The vice president of HomeStreet, stated in her original declaration that "the bank" had been the purchaser, implying HomeStreet. She corrected this statement in a later declaration, stressing that she had personally placed the successful bid on behalf of Union Street, a wholly owned subsidiary of HomeStreet.

B.    Procedural History

Because Charities failed to vacate by the 20th day after the foreclosure sale as required by RCW 61.24.060, on February 9, 2015, Union Street filed a complaint for unlawful detainer in Pierce County Superior Court. The complaint named Charities, Management, and Ventures. An order was issued February 11, 2015, directing the defendants to appear on February 18, 2015, and "show cause" why the court should not issue a writ of restitution restoring Union Street to possession of the property.

Charities submitted a memorandum in opposition to the unlawful detainer action requesting that the "court should exercise its equitable authority to affirm South Sound Charities lease or alternatively provide South Sound Charities with a reasonable time to close out its operations and complete its contracts that were entered into with third parties in reliance on its right to occupy and operate the Pacific Sports Center."

In its February 18, 2015, order, the trial court commissioner agreed, in part, with Charities' request, and entered an order extending Charities right to occupy the property until March 7, 2015, the last day of the ongoing soccer season. The order was conditioned on Charities making two $22,000 payments to Union Street before March 1, 2015. The order stated that if Charities did not comply, Plaintiff "may appear ex parte and obtain a writ of restitution." The order also prohibited Charities from soliciting or entering into other leagues or other activity beyond the March 7, 2015 expiration period.

-4-

Without explanation, the trial court commissioner set the matter over for trial. Trial was set for March 26, 2015.

Charities did not object to the requirement to make the two $22,000 payments: it paid $22,000 to Union Street on February 19, 2015 and February 28, 2015. Charities maintained occupation of the property.

On February 26, 2015, Charities filed a motion requesting that the trial court permit it to continue operations and occupancy through May 10, 2015. On March 6, 2015, the trial court denied the motion and affirmed that Charities was required to vacate the property "no later than midnight on March 7, 2015."

On March 7, 2015, a HomeStreet security officer arrived and began changing the locks. A Charities officer protested this action, stating that he could not proceed without a writ of restitution. The security officer then called the Tacoma Police Department. The police were shown the trial court's March 6, 2014, order and threatened to arrest the Charities officer if he interfered.

On March 12, 2015, Charities filed a motion to dismiss under CR 12(b)(6) and for lack of jurisdiction. Charities' motion also sought reconsideration of the trial court's March 6, 2015, order. The trial court denied the motions.

The parties appeared on March 26, 2015, for trial on the unlawful detainer action. Because Union Street was in possession of the property, the trial court inquired as to what issues remained. Charities asserted that possession was still at issue. The trial court disagreed and ordered that Union Street "is entitled to possession of the property . . . No writ is necessary in light of [Union Street's] possession of the property. The court ordered that all remaining issues, presumably Charities' affirmative defenses,

claims for damages, and any counterclaims, would be reserved for a standard civil trial and set a new trial date.

Charities sought discretionary review on April 17, 2015, which was denied. As the case neared trial, Union Street sought dismissal of the case without prejudice or continuance. Charities agreed to dismissal on the condition that it be entered "with prejudice." Accordingly, the action was dismissed with prejudice on November 20, 2015. Charities' appeal followed.

On July 26, 2016, Union Street sold the property by special warranty deed, and is thus no longer in possession.

II

A.    Standard of Review

The questions before the court on appeal are questions of law and fact. We review questions of law de novo. Mountain Park Homeowners Ass'n v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Since the record consists entirely of written material, we stand in the same position as the trial court and review the record de novo. Housing Authority of the City of Pasco and Franklin County v. Pleasant, 126 Wn. App. 382, 387, 109 P.3d 422 (2005).

B.    Mootness

Charities raises seven issues on appeal: (1) whether Union Street was the purchaser at the trustee sale, (2) whether the trial court erred in not conducting a trial to determine if there was a proper trustee sale, (3) whether the court commissioner erred in ordering the payment of rent for continued occupancy, (4) whether Union Street's acceptance of rent terminated the ability to proceed with an unlawful detainer action,

(5) whether an unlawful detainer procedure is appropriate where Union Street had knowledge of Charities' preexisting unrecorded lease, (6) whether the trial court erred in ordering Charities to vacate without issuance of a writ of restitution, and (7) whether the trial court erred in not holding a trial on Charities' affirmative defense of equitable estoppel. With the possible exception of Charities' third issue, all of Charities' claims seek the same remedy—reversal and restoration of Charities' possession. We must first determine whether we can provide effective relief.

On August 8, 2016, while this matter was pending on appeal, Union Street filed a motion to supplement the record pursuant to RAP 9.11 and ER 201, by taking notice of the recording of a special warranty deed transferring title to the property to a third party entity. Charities opposed the motion to supplement. On September 9, 2009, the court commissioner for Division II of this court directed Union Street to file a copy of the deed with the trial court and file a supplemental designation of clerk's papers. The ruling was made "without prejudice" to South Sound Charities' ability to move to supplement the record with evidence demonstrating that the deed was not the result of a bona fide third party sale. In response, Union Street filed a copy of a special warranty deed recorded July 28, 2016, conveying the property from Union Street to 2646 South 80th, LLC. Charities has not offered any evidence disputing the validity of the conveyance. It therefore appears that Union Street no longer holds title to the property at issue in this case.

As a general rule, appellate courts "do not consider cases that are moot or present only abstract questions." State v. Beaver, 184 Wn.2d 321, 330, 358 P.3d 385 (2015). "A case is technically moot if the court cannot provide the basic relief originally

-7-

sought, or can no longer provide effective relief." Josephinium Assocs. v. Kahli, 111 Wn. App. 617, 622, 45 P.3d 627 (2002).

Charities argues that its appeal is not moot because it has not conceded the right of possession. Charities is correct that an unlawful detainer action does not necessarily become moot simply because the tenant no longer has possession of the premises at the time of appeal. Pleasant, 126 Wn. App. at 388 (citing Lochridge v. Natsuhara, 114 Wn. 326, 330, 194 P. 974 (1921)). Charities' argument might be persuasive if Union Street still held title to the property and Charities' claims could be resolved between the parties before the court. But where, as here, Union Street no longer has title to the property and the true owner is not a party to Charities' action, we can no longer provide effective relief. Josephinium Assocs., 111 Wn. App. at 622. See also Kessler v. Nielsen, 3 Wn. App. 120, 126, 472 P.2d 616 (1970) (where landlords were in possession of the property tenants' claim to possessory right was not moot because the issue could be "determined vis-à-vis the parties"). Because we cannot provide the relief Charities seeks—the right to restore its tenancy—Charities' nonmonetary claims are moot.

## C.    Payments for Continued Occupation

While Charities' claims seeking possession are moot, it does not mean this case is entirely moot. If a tenant has a monetary stake in the outcome of the case, such as payment of rent, damages, and attorney fees, those claims are not moot. McGary v. Westlake Investors, 99 Wn.2d 280, 284, 661 P.2d 971 (1983). While Charities does not seek damages as part of its assignments of error, it claims on appeal that because the trial court ordered the payment of $44,000 and Union Street accepted the payment,

-8-

that Union Street should have been precluded from proceeding further. In response to Union Street's argument that the case is moot, Charities questions: "Moreover there is the issue that $44,000 in rent was paid. How is it that Union Street gets to take February and March rent and then kick Charities out on March 7, 2015?" Because this is, at least impliedly, a claim for damages, we will address it. Charities' claim that the two $22,000 payments were improper fails for two reasons.

First, Charities invited the error that it now complains about. Pursuant to RCW 61.24.060, Charities was required to vacate the property by February 5, 2015, the 20th day after the foreclosure sale. After it failed to do so, Union Street filed its complaint for unlawful detainer and set a show cause hearing for February 18, 2016. Rather than vacate, Charities instead asked the court to "exercise its equitable authority to affirm South Sound Charities lease or alternatively provide South Sound Charities with a reasonable time to close out its operations and complete its contracts that were entered into with third parties in reliance on its right to occupy and operate the Pacific Sports Center." The court then exercised its equitable authority and over Union Street's objection granted Charities the relief it requested by allowing Charities to continue occupation until March 7, 2016, based on the condition it make two $22,000 payments to Union Street. Charities did not object, made the two required payments, and maintained its occupation of the property until March 7, 2015.

The invited error doctrine "prohibits a party from setting up an error at trial and then complaining of it on appeal." Angelo Property Co. LP v. Hafiz, 167 Wn. App. 789 823, 274 P.3d 1075 (2012) (quoting City of Seattle v. Patu, 147 Wn.2d 717, 720, 58 P.3d 273 (2002). Charities invited the trial court to exercise its equitable authority and

allow it additional time to occupy the property and when the court did so conditioned on payment of $44,000, Charities accepted the court's order, made the payments, and continued to occupy the property. Charities cannot now complain that the trial court erred.

Second, to the extent that Charities is claiming that the trial court commissioner erred in requiring two payments of $22,000 while only allowing Charities to continue its occupation for one month, Charities failed to make this argument below. In general, we will not review an issue, theory, argument, or claim of error not presented at the trial court level. Mukilteo Retirement Apartments, L.L.C. v. Mukilteo Investors, L.P., 176 Wn. App. 244, 258, 310 P.3d 814 (2013); RAP 2.5(a).[2]

We affirm.

WE CONCUR:

_____ Mann, J.

_____ Appelwick, J.

_____ Becker, J.

---

[2] While the record does not explain why the trial court commissioner required two payments of $22,000, we note that the RCW 59.12.170 provides authority for the court to award twice the amount of damages incurred for an unlawful retainer. "The measure of 'damages' for unlawful detainer is based on the fair market value of the use of the premises." Sprincin King St. Partners v. Sound Conditioning Club, Inc., 84 Wn. App. 56, 63, 925 P.2d 217 (1996).

-10-