FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 APR 23 PM 1: 09

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MIDTOWN LIMITED PARTNERSHIP, a )
Washington limited partnership, )
                 )
           Respondent, )
                 )
           v. )
                 )
OMARI TAHIR-GARRETT, a.k.a. )
OMARI TAHIR, a.k.a. JAMES C. )
GARRETT; and ALL OTHER )
OCCUPANTS, )
                 )
           Appellant. )
_____ )

DIVISION ONE

No. 76605-8-I (consol. with
No. 77005-5-I)

UNPUBLISHED OPINION

FILED: April 23, 2018

DWYER, J. — Omari Tahir-Garrett appeals from three orders of the trial court finding him in contempt and an order of the trial court declaring unlawful detainer and authorizing issuance of a writ of restitution in favor of MidTown Limited Partnership. Tahir-Garrett contends that the trial court erred by finding him in contempt, by entering its unlawful detainer order, and by issuing a writ of restitution.

Concluding that there was no error, we affirm.

I

MidTown Limited Partnership owned a block of real estate in Seattle's Central District.[1] In the southeast corner of MidTown's property was a parcel of

_____

[1] MidTown sold the Central District property in May 2017.

land, also owned by MidTown, containing a single-family residence with a large, adjacent yard.[2]

In 2015, MidTown decided to sell its property and, as part of this decision, decided to demolish the residence. At that time, the residence was occupied by Tahir-Garrett, who had been living there without making rental payments and without a written lease agreement.[3]

In late 2015, MidTown informed Tahir-Garrett of its intent to demolish the residence, served him with a notice of application for a tenant relocation license, and offered him relocation assistance. However, Tahir-Garrett refused to leave the residence and did not accept MidTown's offer. In addition, by this time, he had also moved eight used, unlicensed vehicles—including a large truck and a camper—onto the residence's yard.

Additionally, Tahir-Garrett, pro se, filed a lis pendens against MidTown's block of real estate—including against the parcel of land on which the residence was located—and claimed that he had a right to the real estate through adverse possession.[4] He also filed a complaint in federal district court alleging racial discrimination, assault, and defamation against him by MidTown and Margaret Delaney, a principal of MidTown. The federal district court dismissed Tahir-

---

[2] As part of its business operations, MidTown leased commercial space within facilities located on the property. This included leasing building space to a United States Postal Service branch office.

[3] Tahir-Garrett had been employed by Thomas Bangasser, the then-general partner of MidTown, to pick up trash and litter at the MidTown Center, a structure on MidTown's property. In exchange for this work, Tahir-Garrett was allowed to occupy the residence without making rental payments. Thomas Bangasser was removed from his leadership position in 2015 and Tahir-Garrett was informed by MidTown that his services were no longer required.

[4] At all times addressed herein, Tahir-Garrett did not have legal counsel but, rather, represented himself.

Garrett's claims and dissolved the lis pendens. Tahir-Garrett subsequently filed another lis pendens. It was also judicially dissolved.

In early March 2016, MidTown formally served Tahir-Garrett with a three-day notice to vacate. Tahir-Garrett did not comply. Instead, he invited a group of nearly 20 individuals to set up an encampment and occupy the residence's yard. The occupants set up numerous tents and deposited large amounts of garbage and debris in the yard.

In late March, the City of Seattle issued a notice of violation to MidTown alleging that the encampment constituted a violation of the city's land use code.[5]

Two months later, in May 2016, MidTown filed an action seeking a declaration of unlawful detainer against Tahir-Garrett and any other occupants on the parcel of land—alleging that they were creating a nuisance and engaging in waste and unlawful business operations—and requesting issuance of a writ of restitution.

A show cause hearing was scheduled for mid-May but, because MidTown was initially unable to serve Tahir-Garrett with its filings, the hearing was rescheduled for early June. Around this time, Tahir-Garrett filed a notice seeking to remove MidTown's unlawful detainer action to federal district court. The June show cause hearing did not occur.

---

[5] The city's notice of land use violation threatened to charge MidTown with a fine of $500 per day for its continuing noncompliance.

In August 2016, the federal district court remanded the matter to state court, ruling that the federal court lacked jurisdiction. Tahir-Garrett nevertheless filed two successive motions for reconsideration, both of which were denied.

Meanwhile, in September 2016, MidTown reached an agreement with 16 of the occupants of the encampment. In exchange for receiving $400 each, the occupants agreed to pick up their debris, leave MidTown's property, and not return. Although most of the occupants then removed themselves from the parcel, a large amount of debris and garbage nevertheless remained, as did other occupants who did not accept MidTown's offer. At this time, Tahir-Garrett still occupied the residence.

One month later, the City of Seattle issued another notice of land use violation against MidTown. The unlawful conditions identified therein included the presence of garbage, debris, junk, and vehicles in the yard surrounding the residence.

In late October 2016, MidTown served Tahir-Garrett with another three-day notice to vacate, alleging waste, nuisance, and unlawful business. Again, Tahir-Garrett did not comply.

A show cause hearing was scheduled for November 30, 2016. However, on the day before the hearing date, Tahir-Garrett filed another notice of removal to federal district court, asserting the same bases as his initial removal notice. Despite MidTown's request to proceed with the show cause hearing, the assigned superior court commissioner declined to do so in light of Tahir-Garrett's removal notice.

Because the federal district court had already denied Tahir-Garrett's first notice of removal, MidTown moved to revise the commissioner's ruling and requested a hearing date for December 16. Judge Hollis Hill was assigned to decide MidTown's motion. Tahir-Garrett requested that the hearing not be held until mid-January, explaining to the court that he suffered from posttraumatic stress disorder (PTSD) that prevented him from appearing in court until that time. Judge Hill set the hearing for December 23.

On December 23, both parties appeared before Judge Hill for argument on MidTown's motion to revise the commission's ruling. However, Tahir-Garrett declared that he was unwilling to argue his position that day. Thereafter, Tahir-Garrett began to engage in disorderly conduct. When Judge Hill demanded that he cease his disruptive conduct or face being escorted from the courtroom, Tahir-Garrett fell to the floor. Medical personnel were summoned to the courtroom. The hearing was continued until the following week.

In late December, two days before the rescheduled hearing on MidTown's motion to revise the commissioner's ruling, Tahir-Garrett notified the trial court that, due to medical reasons, he was unavailable for a hearing until late January. Judge Hill reset the hearing for January 10, 2017, and required that Tahir-Garrett produce verification from a qualified health care provider if he was unable to attend the hearing that day. No such verification was ever provided.

During this time, the federal district court remanded the matter to state court, determining that his second notice of removal was "frivolous."

On January 10, Judge Hill heard argument on MidTown's motion regarding the commissioner's ruling and ruled that Tahir-Garrett's notice of removal was a legal nullity. Judge Hill further enjoined Tahir-Garrett from filing additionally notices of removal without first obtaining judicial approval. Judge Hill referred MidTown's action to the chief civil judge to set a trial within 30 days.

In late January 2017, the newly assigned superior court judge, upon his own motion, recused himself and MidTown's action was reassigned to Judge Suzanne Parisien. Trial was initially set on MidTown's action for February 21 but was later reset to February 23. MidTown filed and served a trial memorandum and witness and exhibit lists. No trial materials were filed or served by Tahir-Garrett.

On the afternoon of February 23, both parties appeared before Judge Parisien for trial. Tahir-Garrett notified Judge Parisien that he wished to disqualify her from presiding over the trial. Judge Parisien did not grant his request.[6]

Thereafter, Tahir-Garrett engaged in protracted disrespectful and disruptive conduct. Finally, Judge Parisien indicated that she was again finding him in contempt. Immediately thereupon, Tahir-Garrett fell to the floor. Medical personnel were summoned and Tahir-Garrett was escorted out of the courtroom. He did not return that day.

---

[6] Judge Parisien had, two days prior, entered a contempt order against Tahir-Garrett under the cause number assigned to MidTown's action against Tahir-Garrett. This contempt order resulted from Tahir-Garrett entering Judge Parisien's courtroom while she was presiding over a jury trial in an unrelated matter and engaging in disrespectful and disruptive conduct. Tahir-Garrett's conduct caused Judge Parisien to excuse the jurors. She found Tahir-Garrett in contempt and ordered his removal from the courtroom.

Judge Parisien found that, based on his history of repeatedly falling to the floor and acting unresponsive at critical stages in legal proceedings, Tahir-Garrett had feigned a health condition in order to delay the commencement of trial. She ordered that the trial would proceed in his absence.

That afternoon, MidTown called and examined three witnesses—a police officer and two of MidTown's principals—and introduced numerous exhibits in support of its unlawful detainer action.[7]

Ultimately, Judge Parisien entered an order declaring that Tahir-Garrett and other unnamed occupants were in unlawful detainer of the parcel of MidTown property on which the residence and yard here at issue were located. The trial court concluded that the occupants—including Tahir-Garrett—had committed and caused waste, created and maintained a nuisance, and operated an unpermitted, unlawful encampment in violation of city code. Judge Parisien authorized issuance of a writ of restitution on behalf of MidTown and enjoined Tahir-Garrett from possessing or entering both the parcel of land containing the residence here at issue and the encompassing block of real estate owned by MidTown.

On March 2, 2017, an officer from the King County Sheriff's Office served the writ of restitution on Tahir-Garrett, who was given three days to vacate the residence and remove himself from MidTown's property. He did not comply and

---

[7] Although not identified as a witness by either party, Thomas Bangasser volunteered to testify at trial in defense of Tahir-Garrett. Over MidTown's counsel's objection, he was permitted to testify.

The trial court later determined that much of his testimony was simply argumentative and was otherwise irrelevant to the merits of MidTown's unlawful detainer action.

instead continued to occupy the residence. In mid-March, a sheriff's officer located Tahir-Garrett within the residence and removed him from MidTown's property.

Thereafter, however, Tahir-Garrett continued to "almost daily" enter MidTown's property, including entering and occupying a commercial facility owned by MidTown that did not, at that time, have a tenant. In addition, Tahir-Garrett—and individuals on his behalf—located, followed, photographed, videotaped, and intimidated several of MidTown's principals, employees, contractors, and potential real estate purchasers while they were conducting operations in and regarding MidTown's property. Accordingly, MidTown filed a motion in superior court seeking a contempt order against Tahir-Garrett for his persistent violations of Judge Parisien's order.

Judge Parisien granted MidTown's motion and entered a contempt order permanently restraining Tahir-Garrett from entering MidTown's property, from being within 200 feet of that property, from being within 200 feet of numerous individuals, including MidTown's principals, employees, contractors, and prospective real estate purchasers, and from "contacting, following, surveilling, harassing, stalking, video recording, and photographing" those individuals.[8]

---

[8] During this time, Tahir-Garrett again submitted a notice of removal to federal district court, which was again determined by that court to be frivolous and a "[f]lagrant abuse of the judicial process." He also filed a complaint in federal district court against MidTown and its partners, the King County Sheriff's Office, and the Seattle Police Department. The lawsuit was dismissed as frivolous.

Tahir-Garrett now appeals from the trial court's contempt orders and the trial court's order declaring unlawful detainer and authorizing issuance of a writ of restitution.

II

A

Tahir-Garrett contends that the trial judge erred by not recusing herself from presiding over MidTown's action against him because, on the day of trial, he orally requested that she disqualify herself from MidTown's action. Tahir-Garrett was attempting to utilize the procedure colloquially referred to as an "affidavit of prejudice." There was no error.

An "affidavit of prejudice" is governed by statute. The statute, RCW 4.12.050, reads:

> (1) Any party to or any attorney appearing in any action or proceeding in a superior court may disqualify a judge from hearing the matter, subject to these limitations:
>     (a) Notice of disqualification *must be filed* and called to the attention of the judge *before the judge has made any discretionary ruling in the case.*

(Emphasis added.)

In addition, "[w]hether contempt is warranted in a particular case is a matter within the sound discretion of the trial court." In re Pers. Restraint of King, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988) (citing Schuster v. Schuster, 90 Wn.2d 626, 630, 585 P.2d 130 (1978)).

As indicated, Judge Parisien was assigned to MidTown's unlawful detainer action in late January 2017. Nearly one month later, on February 21, 2017, Tahir-Garrett entered Judge Parisien's courtroom while she was presiding over

an unrelated jury trial. While in the courtroom, Tahir-Garrett engaged in disrespectful and disorderly behavior and refused to comply with Judge Parisien's instructions to cease his disruptive conduct. Judge Parisien found him in direct contempt and ordered him removed from the courtroom. Judge Parisien's contempt order set forth that it was entered under the case caption and cause number assigned to MidTown's unlawful detainer action against Tahir-Garrett (No. 16-2-10995-1 SEA).

Two days after entry of the foregoing contempt order, Tahir-Garrett appeared before Judge Parisien for trial on MidTown's unlawful detainer action. He then orally demanded that she disqualify herself. Judge Parisien did not grant the request.

There was no error. By issuing the February 21 contempt order against Tahir-Garrett under the case caption and cause number assigned to MidTown's unlawful detainer action against Tahir-Garrett, Judge Parisien had made a discretionary ruling in the case. Judge Parisien was thus under no obligation to disqualify herself in response to Tahir-Garrett's attempted utilization of an "affidavit of prejudice."[9]

---

[9] Tahir-Garrett contends that Judge Parisien also erred because she did not recuse herself on the basis of alleged racial animosity toward him. However, Tahir-Garrett presented no evidence supporting this allegation. Accordingly, the contention fails.

B

(i)

Tahir-Garrett next contends that the trial court erred by finding him in direct contempt on two separate occasions arising from his disorderly and disrespectful conduct in the courtroom. Tahir-Garrett is wrong.

We review a contempt order entered by a trial court for abuse of discretion. King, 110 Wn.2d at 798. Discretion is abused if the court's decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A court's decision is based on untenable grounds if the factual findings are unsupported by the record. Littlefield, 133 Wn.2d at 47.

A trial court must make findings of fact setting forth the basis for its judgment of contempt, State ex rel. Dunn v. Plese, 134 Wash. 443, 447-48, 235 P. 961 (1925), including findings of "bad faith or intentional misconduct." In re Marriage of James, 79 Wn. App. 436, 440, 903 P.2d 470 (1995).

The principles relating to direct contempt are set forth by statute. "The judge presiding in an action or proceeding may summarily impose either a remedial or punitive sanction authorized by this chapter upon a person who commits a contempt of court within the courtroom if the judge certifies that he or she saw or heard the contempt." RCW 7.21.050(1). "Contempt of court" includes intentional

> [d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority, or to interrupt the due course of a trial or other judicial proceedings.

- 11 -

RCW 7.21.010(1)(a).

As indicated, Judge Parisien found Tahir-Garrett in direct contempt on February 21, 2017 when he entered her courtroom while she was presiding over a jury trial in an unrelated matter. Observing that Tahir-Garrett was "loud, disorderly," and was "stopping the trial currently in process," Judge Parisien excused the jury for an unscheduled recess, found Tahir-Garrett in contempt, and ordered him removed from the courtroom.

Judge Parisien next found Tahir-Garrett in direct contempt two days later, on February 23. The trial judge found:

> Prior to the commencement of the proceedings, [Tahir-Garrett] began yelling to the court, counsel for the petitioner and pounding his fists loudly on the table. He refused to de-escalate despite the court's direction. He was unruly and disruptive. Upon being notified that the court was finding him in contempt, he fell to the ground and became suddenly unresponsive. He did not respond to any of the first responders.

There is no dispute that Judge Parisien observed Tahir-Garrett's disruptive and unruly conduct on both of the occasions that she entered a contempt order against him. Given that, Judge Parisien's contempt rulings were clearly tenable. Tahir-Garrett's claims fail.

(ii)

Tahir-Garrett next contends that the trial court erred by entering the first direct contempt order against him because, at the time of his contemptuous behavior, Judge Parisien was presiding over a jury trial in a matter unrelated to MidTown's action against him. Thus, he claims, his contempt must have been, as a matter of law, unrelated to his case.

Tahir-Garrett is wrong. Judge Parisien found that his contemptuous conduct was related to his lawsuit with MidTown. Indeed, Tahir-Garrett had no relation to or interest in the trial over which Judge Parisien was then presiding. Thus, Judge Parisien was correct in ruling both that Tahir-Garrett's contemptuous conduct had taken place in front of her and that it was related to the ongoing unlawful detainer action. Accordingly, she was authorized to enter the contempt finding and order under that case caption and cause number.

(iii)

Tahir-Garrett next contends that the trial court erred because Judge Parisien found him in direct contempt for stopping a jury trial that was in progress. The trial court erred, he asserts, because it was Judge Parisien herself who excused the jurors in order to address Tahir-Garrett. We disagree.

Plainly, the necessity for Judge Parisien to order an unscheduled recess of the ongoing jury trial was brought about by Tahir-Garrett's appearance in her courtroom that day and his unruly behavior. Tahir-Garrett's disruptive conduct amply justified the trial court's order. There was no error.[10]

---

[10] Tahir-Garrett also contends that the trial court erred because it issued two direct contempt orders against him without also setting forth instructions on how to purge himself of the contempt. His argument is based on a misperception.

After finding an individual in direct contempt, the trial court may impose punishment of "a fine of not more than five hundred dollars or imprisonment for not more than thirty days." RCW 7.21.050(2). Thus, once the trial court found him in direct contempt, Tahir-Garrett had no right to purge his contempt. There was no error.

Tahir-Garrett next contends that Judge Parisien erred by entering the second contempt order against him because she had openly considered on the record whether his disabled state (he had fallen to the floor) nullified his contempt. However, shortly after this musing, Judge Parisien ruled that his disruptive conduct had warranted finding him in contempt for a second time and that his subsequent feigning of a health condition did not warrant vacation of that ruling. There was no error.

C

Tahir-Garrett next contends that the trial court erred by commencing trial on MidTown's unlawful detainer action without first holding a show cause hearing. We disagree.

RCW 59.18.370 sets forth the procedure under the Residential Landlord-Tenant Act of 1973[11] for a show cause hearing in a residential tenancy unlawful detainer action. The provision reads:

> *The plaintiff,* at the time of commencing an action of forcible entry or detainer or unlawful detainer, or at any time afterwards, upon filing the complaint, *may* apply to the superior court in which the action is pending for an order directing the defendant to appear and show cause, if any he or she has, why a writ of restitution should not issue.

RCW 59.18.370 (emphasis added).

There was no error. In setting forth the procedure for requesting a show cause hearing, RCW 59.18.370 identifies the plaintiff—rather than the defendant—as the pertinent actor. Indeed, no wording contained in RCW 59.18.370 grants a defendant in an unlawful detainer action the right to request such a hearing.

Moreover, in setting forth the procedure for a show cause hearing, the provision reads that the plaintiff "may" request such a proceeding. RCW 59.18.370. Use of the word "may," of course, reflects that the procedure is not mandatory. Accordingly, Tahir-Garrett's claim fails.

---

[11] Codified at chapter 59.18 RCW.

Tahir-Garrett next contends that RCW 59.18.380 grants him the right to a show cause hearing. We disagree.

The provision reads:

> At the time and place fixed for the hearing of plaintiff's motion for a writ of restitution, the defendant, or any person in possession or claiming possession of the property, may answer, orally or in writing, and assert any legal or equitable defense or set-off arising out of the tenancy. If the answer is oral the substance thereof shall be endorsed on the complaint by the court.

RCW 59.18.380.

Tahir-Garret's claim fails. RCW 59.180.380 does not establish a defendant's right to a show cause hearing but, rather, sets forth a defendant's right to answer and assert defenses at a show cause hearing once such a hearing had been set. Here, rather than submitting an answer orally or in writing to MidTown's motion for a writ of restitution, Tahir-Garrett attempted to remove MidTown's actions to federal court, thereby discontinuing the scheduled show cause hearings. In this way, that Tahir-Garrett was unable to answer and assert a defense at a show cause hearing was the result of his own conduct. That no show cause hearing was ever held was plaintiff's option.

There was no error.

D

Tahir-Garrett next contends that the trial court erred by holding trial on MidTown's unlawful detainer action without his presence. We disagree.

The statutory provisions underlying a residential tenancy unlawful detainer action provide for issues alleged in an unlawful detainer pleading to be resolved at trial. RCW 59.18.380; 59.12.130. However, an action may proceed to trial

without the presence of a defendant where his "deliberate absence from the proceedings bespeaks neither due diligence nor good faith." Odom v. Williams, 74 Wn.2d 714, 718, 446 P.2d 335 (1968). Indeed, "'[i]t is the duty of a party to be present at the trial of his own cause, and his absence will as a general rule be considered as his own peril.'" Thornthwaite v. Greater Seattle Realty & Improvement Co., 160 Wash. 651, 653, 295 P. 933 (1931) (internal quotation marks omitted) (quoting Nye v. Manley, 69 Wash. 631, 636, 125 P. 1009 (1912)). A party may voluntarily elect not to attend a proceeding. State v. Garza, 150 Wn.2d 360, 367, 77 P.3d 347 (2003). An express waiver is not required. A party's voluntary absence may be implied from his conduct. Garza, 150 Wn.2d at 367.

Here, the parties appeared before Judge Parisien on the afternoon of February 23 to commence the trial on MidTown's unlawful detainer action. As indicated, Tahir-Garrett engaged in disruptive and disrespectful conduct resulting in the issuance of Judge Parisien's second direct contempt order against him.

As pertinent here, the contempt order set forth that, "[u]pon being notified that the court was finding him in contempt, [Tahir-Garrett] fell to the ground and became suddenly unresponsive. He did not respond to any of the first responders."

Significantly, immediately after Tahir-Garrett became suddenly nonresponsive, the trial judge and counsel for MidTown engaged in the following exchange:

> MR. SIRIANNI: Your Honor, this is the second time in two weeks that this has happened.

THE COURT: Right. And my review of the file indicates that this has happened on other occasions going as far back as 2002.

MR. SIRIANNI: Correct, Your Honor.

THE COURT: And we're going to proceed. And if the appropriate motions are filed later, we can -- I'll react to those as we see fit. But the Court has seen that this is a repeated occurrence. And at some point, justice needs to go forth. . . .

THE CLERK: Officer, is he conscious?

UNIDENTIFIED SPEAKER: Yes. His stomach is moving. He's breathing. He's moving around.

Therefore, Judge Parisien found that, based on Tahir-Garrett's history of repeatedly suffering from health conditions at critical stages in court proceedings, he was feigning a medical condition in order to delay the commencement of the trial.

Thereafter, as a precautionary measure, medical personnel were summoned and Tahir-Garrett allowed them to remove him from the courtroom. As indicated, Judge Parisian, in light of her finding that Tahir-Garrett was malingering to avoid trial, proceeded to try MidTown's action in Tahir-Garrett's absence.

Tahir-Garrett's claim of error fails. By commencing trial without Tahir-Garrett's presence after finding that he was not, in actuality, suffering from a medical condition, the trial court effectively determined that he had voluntarily absented himself from the proceeding. Indeed, by feigning an illness and allowing medical personnel to escort him out of the courtroom, Tahir-Garrett implicitly opted not to attend the trial set for that day. Moreover, at no juncture thereafter did he present to the trial court any evidence (such as a doctor's report) indicating that he suffered from a recurring medical condition or excusing his conduct on February 23.

- 17 -

To have again rescheduled adjudication of MidTown's action "would have worked an unjustified hardship on [the] plaintiff[] and [its] witnesses . . . and added unpredictable further delay to an already overly extended proceeding." Odom, 74 Wn.2d at 718.

The trial court did not err by commencing trial in Tahir-Garrett's absence.

E

Tahir-Garrett next contends that substantial evidence does not support the findings of fact underlying the trial court's judgment and order declaring unlawful detainer and authorizing issuance of a writ of restitution. We disagree.

We review a trial court's findings of fact regarding unlawful detainer "for substantial evidence, reviewing the record for sufficient evidence to persuade a rational, fair-minded person of the fact's truth." Burgess v. Crossan, 189 Wn. App. 97, 101, 358 P.3d 416 (2015) (citing IBF, LLC v. Heuft, 141 Wn. App. 624, 638, 174 P.3d 95 (2007)).

At trial in this matter, MidTown called three witnesses to testify. The first witness called was Seattle Police Officer Arthur Garza. Officer Garza testified that he investigated "claims that there was an illegal encampment at the property occupied by Mr. Tahir-Garrett." He further testified that he wrote a report of his investigation and, in his report, he concluded that Tahir-Garrett had invited a large number of individuals to stay on the property.

MidTown next called Delaney as a witness. Delaney testified that she was MidTown's property manager and stated that MidTown owned the parcel of land

in question. In addition, she testified that she had frequently observed the condition of and occurrences involving the parcel of land.

Delaney testified that, in March 2016, she noticed that a group of nearly 20 individuals were setting up tents in the yard of the residence. She testified that Tahir-Garrett had invited them to do so and that neither she nor MidTown authorized the use of the residence as a transitional encampment.

Delaney also identified photographs that she had taken of the residence's yard in November 2016. She testified that the photographs depicted that surrounding the residence there were "all kinds of furniture," "a number of vehicles," "[a] lot of blue plastic tarps," "garbage and junk," "an abandoned camper," and, on the porch of the residence, "trash and flags and mats and stuff and Christmas lights."

When asked to testify as to the condition of the property as of the time of trial (February 2017), Delaney stated that there remained a "trash heap" around the residence: a "pile of debris," "bookcases," "a mattress," "a lot of plastic stuff," "pieces of wood," and "[l]ots of furniture."

Delaney also testified that photographs taken around that time reflected that the trash pile "has gotten taller since the first pictures" and that there remained in the residence's yard "blue tarps surrounding pieces of wood, half-built things," the abandoned camper, mattresses, and bookcases. Delaney further testified that MidTown had received constant complaints from neighbors regarding the yard's condition, odors emanating therefrom, and concerns for their families' safety.

Delaney next testified that, by the fall of 2016, MidTown reached an agreement with 16 of the individuals in the encampment, giving them each $400 in exchange for their promise to pick up their possessions and garbage, leave MidTown's property, and not return.

Delaney also testified that MidTown had formally served Tahir-Garrett with a notice to vacate the parcel on three occasions. The first notice was served in March 2016, the second notice in April 2016, and the third notice in October 2016.

MidTown next called Hugh Bangasser, another principal of MidTown, as a witness. Bangasser's testimony supported Delaney's. He testified that, in April 2016, there were tents, piles of trash, and inoperative vehicles in the residence's yard. He further testified that, in October 2016, one month after most of the individuals in the encampment had left, the residence's yard still contained inoperative vehicles alongside "much of the debris, trash, and various things that had been left by the camp of people who had departed, including appliances, bicycles, just a variety of trash of various kinds and types."

Bangasser also testified that, in December 2016, a vehicle parked in the residence's yard exploded, causing a fire that destroyed both that vehicle and an adjacent vehicle in the yard. Bangasser testified that, shortly thereafter, in response to the explosion, the city sent MidTown an emergency order instructing any occupants within the residence to vacate.

Bangasser next testified that the city had issued repeated notices of violation to MidTown threatening legal action arising from violations of the city's

- 20 -

land use code occurring in the residence's yard. He testified that the city's notices were directed at the garbage, debris, junk, vehicles, and related items in the yard surrounding the residence.

Thereafter, Bangasser testified that MidTown had received complaints from individuals living near the residence regarding the debris surrounding the residence, odors emanating from the yard, and concerns about their safety.[12]

Judge Parisien issued the following findings of fact and conclusions of law:

1. MidTown is the lawful owner and entitled to possession of the real property described as Lots 13 and 14, Block 6, J.H. Rengstorff's addition to the City of Seattle, as recorded in Volume 2 of Plats, page 101, records of King County, Washington, and commonly known as 2314 East Spring Street ("the Premises"). The Premises consists of and includes the house that is situated on it and all of the surrounding yard/ground encompassed within the above legal description.

2. For several years, Mr. Tahir-Garrett has occupied the Premises. In March 2016, at Mr. Tahir-Garrett's invitation and with his cooperation, approximately 20 former residents of the Dearborn Transitional Encampment entered and took up residence at the Premises: Those individuals, together with all other individuals who are or were residing at the Premises (including residents of the house, the yard or vehicles of any type at the Premises) shall be referred to as "Other Occupants."

3. Mr. Tahir-Garrett and the Other Occupants who are living in the house, in tents, in cars, in trucks, in campers or on the ground at the Premises have no right to possess or occupy the Premises, and are doing so without the permission and contrary to the express demands of MidTown. MidTown does not consent to, and objects to, the presence on the Premises of Mr. Tahir-Garrett and the Other Occupants.

_____

[12] At the close of Hugh Bangasser's testimony, Thomas Bangasser, Hugh Bangasser's brother and another principal of MidTown, offered to testify in Tahir-Garrett's defense. Over the objection of MidTown's counsel, Judge Parisien allowed Thomas Bangasser to testify. In her order, Judge Parisien indicated that "[m]uch of Thomas Bangasser's testimony was argument rather than evidence." Resp't Br., Appendix A, at 4.

4. Mr. Tahir-Garrett and the Other Occupants are, as well, occupying the Premises in defiance of a Notice of Violation from the City of Seattle under Case No.1037046, issued on and dated March 29, 2016, and a Notice of Violation from the City of Seattle dated October 10, 2016, along with an Emergency Order from the City of Seattle to Vacate dated December 16, 2016.

5. Mr. Tahir-Garrett and the Other Occupants have, alone and in combination, permanently despoiled and damaged the Premises, which they have caused to be unsafe, unsanitary and filled with unsightly junk and debris. As a result of their action and inaction, they have: (a) committed and caused waste; (b) created and maintained a nuisance; and (c) by operating an unpermitted encampment, conducted and continue to conduct illegal activity on and at the Premises, in violation of the City Ordinances enumerated in Trial Exhibit 10, page 4.

6. Mr. Tahir-Garrett and the Other Occupants were provided with all notices required by law as preconditions to suit for or determination of unlawful detainer, including Notices to Vacate dated March 30, 2016, April 29, 2016, and October 27, 2016, each of which was timely and properly served in accordance with RCW 59.12.040 and other applicable law. Mr. Tahir-Garrett and the Other Occupants have ignored the deadlines set forth in those Notices and continue to occupy and detain the Premises unlawfully, forcibly and without permission of the owner.

As a preliminary matter, Tahir-Garrett fails to specifically assign error to each of the trial court's findings of fact that, he claims, is not supported by substantial evidence. Rather, he assigned error to the trial court's findings of fact on the basis that its order was "one hundred percent empirically false." Br. of Appellant at 6. Such conclusory assignment of error does not warrant appellate consideration. RAP 10.3(a)(4).

Even if we were to consider Tahir-Garrett's claim, we have no difficulty concluding that the trial court's findings of fact are amply supported by the

testimony offered and exhibits admitted at trial. These findings support the conclusions of law set forth in the trial court's order. There was no error.[13]

F

Tahir-Garrett next contends that the trial court erred by barring him from possessing or entering both the parcel of land on which the residence here at issue was located and the square city block of property owned by MidTown encompassing the parcel.

As a preliminary matter, Tahir-Garrett presents no decisional authority or analysis in support of his contention. We do not consider arguments unsupported by authority or analysis. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Nevertheless, Tahir-Garrett's claim also fails on the merits.

RCW 59.18.380 authorizes a trial court in a residential tenancy unlawful detainer action to grant "such other relief as may be prayed for in the plaintiff's complaint and provided for in this chapter." "The procedures set forth in the generalized unlawful detainer statutes, chapter 59.12 RCW, 'apply to the extent they are not supplanted by those found in the Residential Landlord–Tenant Act.'"

---

[13] Tahir-Garrett asserts that the trial court erred by declining to credit the trial testimony of Thomas Bangasser. We disagree. Where substantial evidence exists to support a trial court's findings of fact, we will not disturb those findings even where there is some conflicting evidence. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010) (citing In re Marriage of Lutz, 74 Wn. App. 356, 370, 873 P.2d 566 (1994)). "The deference accorded under the substantial evidence standard recognizes that the trier of fact is in a better position than the reviewing court to evaluate the credibility and demeanor of the witnesses." Peterson v. Big Bend Ins. Agency, Inc., 150 Wn. App. 504, 514, 202 P.3d 372 (2009) (citing State v. Hill, 123 Wn.2d 641, 646, 870 P.2d 313 (1994)).

At trial, the testimony given by Thomas Bangasser conflicted in part with both the testimony presented by Officer Garza, Delaney, and Hugh Bangasser and the exhibits admitted into evidence by MidTown. Judge Parisien found Thomas Bangasser's testimony irrelevant, argumentative, and unconvincing.

Leda v. Whisnand, 150 Wn. App. 69, 77, 207 P.3d 468 (2009) (quoting Hous.

Auth. of City of Pasco & Franklin County v. Pleasant, 126 Wn. App. 382, 390,

109 P.3d 422 (2005)).

> Pursuant to RCW 59.12.030, relief in an unlawful detainer action is
>
> limited to the question of possession and related issues such as restitution of the premises and rent. Kessler v. Nielsen, 3 Wn. App. 120, 472 P.2d 616 (1970); Phillips v. Hardwick, 29 Wn. App. 382, 628 P.2d 506 (1981); Pine Corp. v. Richardson, 12 Wn. App. 459, 530 P.2d 696 (1975); Tuschoff v. Westover, 65 Wn.2d 69, 395 P.2d 630 (1964); First Union Mgt., Inc. v. Slack, 36 Wn. App. 849, 679 P.2d 936 (1984).

Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985).

Here, MidTown sought to declare that Tahir-Garrett and other unnamed

occupants were in unlawful detainer of MidTown's parcel of land. In addition, as

a result of Tahir-Garrett's claim that he obtained a right to the entirety of

MidTown's block of property through adverse possession, MidTown sought to bar

Tahir-Garrett from entering and occupying the entirety of its property in question.

Plainly, the relief sought by MidTown was related to the question of the

possession of MidTown's property (including possession of the parcel of land

also owned by MidTown). Thus, the trial court did not err by barring Tahir-Garrett

from the entirety of MidTown's property, including the parcel of land that he had

unlawfully continued to occupy.[14]

There was no error.

---

[14] Tahir-Garrett contends that the trial court erred because its unlawful detainer order barred him from entering a United States Postal Service branch office located within MidTown's property. He presents no decisional authority or analysis in support of his claim other than identifying Judge Parisien's order as "ridiculous and illegal." Appellant's Notice of Appeal (June 2, 2017). We do not consider arguments unsupported by authority or analysis. Cowiche Canyon Conservancy, 118 Wn.2d at 809.

- 24 -

G

Tahir-Garrett next contends that the trial court erred by enforcing the injunctive relief awarded to MidTown by entering a remedial contempt order to remove him from the property here at issue. We disagree.

Again, we review a trial court's contempt order for abuse of discretion. King, 110 Wn.2d at 798. Contempt of court includes the "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). It is "axiomatic that a court must be able to enforce its orders." In re Interest of M.B., 101 Wn. App. 425, 431, 3 P.3d 780 (2000). An "order of the court must be obeyed implicitly, according to its spirit, and in good faith." Blakiston v. Osgood Panel & Veneer Co., 173 Wash. 435, 438, 23 P.2d 397 (1933).

A trial court's contempt power includes the authority to impose a remedial sanction "on the motion of a person aggrieved by a contempt of court in the proceeding to which the contempt is related." RCW 7.21.030(1).

> If the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose one or more of the following remedial sanctions: . . .
> (c) An order designed to ensure compliance with a prior order of the court.

RCW 7.21.030(2).

Here, MidTown filed a motion seeking issuance of a contempt order arising from Tahir-Garrett's persistent violations of the trial court's order in MidTown's unlawful detainer action. As indicated, MidTown alleged that Tahir-Garrett had not only continued to occupy the residence on the parcel of land in

- 25 -

question but also—after he was evicted from the residence—moved into an unoccupied commercial facility on MidTown's property and proceeded to occupy that space. In addition, MidTown alleged that Tahir-Garrett—and individuals on his behalf—had begun stalking, harassing, intimidating, and disrupting MidTown's principals, employees, and contractors engaged in MidTown's business operations in and around its property. MidTown supported its contempt motion with a declaration from Delaney.

The trial court found that Tahir-Garrett had willfully violated its order and had engaged in the offending conduct alleged by MidTown. Accordingly, the trial court permanently barred Tahir-Garrett from entering MidTown's property and, additionally, permanently barred him from being within 200 feet of MidTown's property, from being within 200 feet of individuals involved in MidTown's operations, and from engaging in the offensive behavior set forth in MidTown's motion.

The trial court's findings are supported by substantial evidence and the determinations underlying its contempt order were tenable. MidTown was aggrieved by Tahir-Garrett's contempt of the trial court's unlawful detainer order. The trial court's contempt order is well-designed to ensure Tahir-Garrett's compliance. The trial court thus did not abuse its discretion by entering the order.

There was no error.

H

Tahir-Garrett presents additional arguments soliciting appellate relief. None merit such relief.

(i)

First, Tahir-Garrett contends that the trial court violated his right to due process by separating him from his legal paperwork prior to trial.

As indicated, Tahir-Garrett was found in direct contempt on February 21 for entering a courtroom and disrupting a trial occurring therein. Judge Parisien indicated to Tahir-Garrett, as he was being escorted out of the courtroom, that his legal paperwork was being brought by an officer who was accompanying him during his removal from the courtroom.

On the day of the trial on MidTown's action two days later, Tahir-Garrett indicated that he did not have his legal paperwork. As Judge Parisien was indicating that she would send someone to look for his paperwork, Tahir-Garrett feigned a health condition, fell to the ground, and was again escorted from the courtroom.

Therefore, Tahir-Garrett, through his own disruptive and unruly conduct, was responsible for separating himself from his legal paperwork. Accordingly, Judge Parisien did not deprive him of his right to due process.

(ii)

Tahir-Garrett next contends that the trial court erred because a motion that he filed on January 23, 2017 was never heard. However, that motion was never noted for a hearing as required by King County Local Rule 7(b)(4), the motion

constituted an untimely request for reconsideration of Judge Hill's order revising the superior court commissioner's ruling, and the merits of his motion requested that a show cause hearing be scheduled, a right to which, as previously set forth, he did not have. There was no error.

(iii)

Lastly, Tahir-Garrett contends that the trial court erred by not granting him a reasonable accommodation prior to trial in this matter. This is so, Tahir-Garrett asserts, because he claimed that a plaque of George Washington on the wall of the courtroom triggered his PTSD symptoms and the trial court did not remove the plaque from the wall.

The trial court properly denied Tahir-Garrett's request. Given that his request was made in the context of both his ongoing disruptive and disrespectful conduct and his repeated attempts at delaying and avoiding legal proceedings, Judge Parisien properly did not consider his request to be a good faith entreaty for a reasonable accommodation.

There was no error.[15]

---

[15] Tahir-Garrett's appellate briefing also presents conclusory arguments that various federal and state constitutional and statutory provisions were violated during the proceedings in this matter. We do not consider arguments unsupported by authority and analysis. Cowiche Canyon Conservancy, 118 Wn.2d at 809.

Affirmed.

We concur: